Case 0:20-cv-61328-AHS   Document 14-1   Entered on FLSD Docket 10/23/2020   Page 1 of 100

IN THE CIRCUIT COURT OF THE
17th JUDICIAL CIRCUIT IN AND FOR
BROWARD COUNTY, FLORIDA

TIM CANOVA,

      Plaintiff,

v.                                   Case No.

BRENDA C. SNIPES, DOZEL
SPENCER, and the BROWARD
COUNTY SUPERVISOR OF
ELECTIONS

      Defendant.

_____/

## COMPLAINT

    Plaintiff, TIM CANOVA ("Mr. Canova"), sues BRENDA C. SNIPES ("Snipes"), DOZEL

SPENCER ("Spencer"), and the office of the BROWARD COUNTY SUPERVISOR OF

ELECTIONS ("Supervisor of Elections"), and in support thereof, alleges:

### JURISDICTION AND VENUE

    1.     This is an action for damages in an amount over $30,000.00 exclusive of interest,

costs, and attorneys' fees.

    2.     At all times material hereto, Defendant, BRENDA SNIPES, resides in and was a

governmental agent authorized to conduct business in the State of Florida and having a main place

of business in Broward County, Florida.

    3.     At all times material hereto, Defendant, DOZEL SPENCER, resides in and was a

governmental agent authorized to conduct business in the State of Florida and having a main place

of business in Broward County, Florida.

4.     At all times material hereto, Defendant, BROWARD COUNTY SUPERVISOR OF ELECTIONS, is a governmental agency authorized to conduct business in the State of Florida and having its main place of business in Broward County, Florida.

5.     At all times material hereto, Plaintiff, TIM CANOVA, was a resident of Broward County, Florida.

6.     Venue is proper in Broward County because all of the actions that form the basis of this Complaint occurred within Broward County.

## PRELIMINARY STATEMENT

7.     This action concerns the deprivation of Mr. Canova's constitutional rights as a candidate for political office. Additionally, the rights of Americans to participate in the democratic process are at stake.

8.     In this matter, Mr. Canova ran as a candidate for the United States House of Representatives in Florida's 23rd Congressional District.

9.     At a time when the country's elections systems are under threat of interference from domestic and foreign actors, public confidence in the dependability and security of those systems is a matter of utmost importance.[1]

10.     Public records laws requiring the preservation of ballots are one measure employed to ensure that external forces do not influence election results.

11.     However, when public officials circumvent public records laws and destroy elections materials, public trust in the democratic process is shaken. Likewise, the constitutional rights of the candidates are violated.

---

[1] U.S. Senate. Select Committee on Intelligence. *Russian Active Measures Campaigns and Interference in the 2016 U.S. Election, Volume 1: Russian Efforts Against Election Infrastructure with Additional Views.* 116th Congress 1st Session, S.Rpt.116-XX.

12.     Following the 2016 Democratic primary, and in response to public records requests seeking an opportunity to review ballot materials, Snipes and the office of the Broward County Supervisor Elections destroyed the ballots from the election.

13.     Mr. Canova's rights were violated by the actions of Snipes, Spencer, and the office of the Broward County Supervisor of Elections.

14.     The outrageous conduct of Snipes, Spencer, and the office of the Broward County Supervisor of Elections further showed callous disregard and indifference for the Mr. Canova's rights as a candidate for political office, as well as for the democratic process in general.

## FACTUAL ALLEGATIONS

15.     Mr. Canova ran as a candidate for the seat of representative of Florida's 23rd Congressional District in the 2016 Florida Democratic primary. The election took place on August 30, 2016.

16.     Mr. Canova allegedly received approximately 43.2 percent of the votes cast for the 23rd Congressional District seat. Mr. Canova was defeated in the primary by Debbie Wasserman Schultz, the incumbent, who allegedly received 56.8 percent of the votes.

17.     On or about 10, 2017, Lulu Friesdat, an agent of Mr. Canova, filed a formal public records request to Ms. Snipes's office, seeking records to be produced pursuant to Chapter 119, Florida Statutes. *See* Exhibit A – Public records request from March 10, 2017. The records sought were various records associated with the August 30, 2016, primary election, including ballots.

18.     On or about May 9, 2017, Mr. Canova additionally requested all of the records previously sought by Ms. Friesdat's request. *See* Exhibit B – Public records request from May 9, 2017.

19.     Subsequent to the public records requests, based on numerous delays by Snipes and the office of the Supervisor of Elections, Mr. Canova was forced to file a Complaint to Compel Production of Public Records Pursuant to Florida's Public Records Act in the Circuit Court of the Eighteenth Judicial Circuit in and for Broward County Florida, on June 7, 2017.

20.     Mr. Canova subsequently filed an amended complaint on October 19, 2017. *See* Exhibit C – Verified Amended Complaint to Compel Production of Public Records Pursuant to Florida's Public Records Act.

21.     In the amended complaint, Mr. Canova raised a claim of Snipes's failure to comply with the Florida Public Records Act, section 119.05, Florida Statutes, seeking a declaration that Snipes was in breach of her constitutional and statutory duties to permit access to public records and requesting that the court compel Snipes to provide access to the records. *Id.*

22.     Mr. Canova filed discovery requests, including requests for production of various documents in relation to his prior public records requests. On August 28, 2017, based on Snipes's failure to respond to discovery requests, Mr. Canova filed a motion to compel responses to his discovery requests. On November 3, 2017, Mr. Canova filed an Amended Motion to Compel Response to Plaintiff's First Requests for Production. *See* Exhibit D – Plaintiff's Amended Motion to Compel Responses to Plaintiff's First Requests for Production.

23.     On September 1, 2017, while the case was in suit, Snipes issued a destruction Order directed to the records sought by the public records request. The physical records in question were destroyed.

24.     On November 6, 2017, the court held a hearing on the motion to compel. At the hearing, Mr. Canova learned that Snipes had personally ordered the destruction of paper ballots

from the August 30, 2016, primary election, and that Spencer had carried out the action of destroying the ballots. *See* Exhibit E – Plaintiff's Motion for Summary Judgment.

25.     On January 19, 2018, Mr. Canova filed a Motion for Summary Judgment seeking final summary judgment against Snipes. In the motion, Mr. Canova alleged that Snipes had "wrongfully certified in the authorization to destroy that the records . . . were not the subject of litigation." *Id.*

26.     Mr. Canova sought a ruling from the court that Snipes had violated the Florida Public Records Act by destroying the ballots. *Id.* Additionally, Mr. Canova sought attorney's fees pursuant to section 119.12, Florida Statutes. *Id.*

27.     On May 17, 2018, the court entered its Order on Plaintiff's Motion for Summary Judgment. *See* Exhibit F – Order on Plaintiff's Motion for Summary Judgment. In its order, the court ruled that Snipes had destroyed the original paper ballots and thus violated the Florida Public Records Act. *Id.* at 8-9. The court granted Mr. Canova's request for attorneys' fees and retained jurisdiction to determine the amount of fees. *Id.* at 9.

28.     Mr. Canova now seeks to recover damages for the violations of his constitutional rights that resulted from the destruction of the aforementioned records.

**COUNT I – CLAIM FOR VIOLATIONS OF FIRST AND FOURTEENTH
AMENDMENTS COGNIZABLE UNDER 42 U.S.C. § 1983
(against Snipes and Supervisor of Elections)**

29.     Mr. Canova realleges and adopts, as if fully set forth herein, the allegations of paragraphs 1-27.

30.     United States Code Chapter 42, section 1983, provides "a remedy for the deprivation of rights 'secured by the Constitution and laws' of the United States by persons acting

under color of state law." *Duncan v. Pythress*, 657 F.2d 691, 700 (5th Cir. Unit B 1981) (citing 42 U.S.C. § 1983).

31.     The right to run for public office is "[f]undamental to our system of government." *Treiman v. Malmquist*, 342 So. 2d 972, 975 (Fla. 1977). This right is a corollary to the right to vote. *Thomas v. Mims*, 317 F. Supp. 179, 181 (S.D. Ala. 1970).

32.     "Candidacy is a First Amendment freedom." *Magill v. Lynch*, 560 F.2d 22, 29 (1st Cir. 1977) (citing *Mancuso v. Taft*, 476 F.2d 187, 195-97 (1st Cir. 1973)). Indeed, participation in political campaigns is "close to the core of the First Amendment." *Waters v. Churchill*, 511 U.S. 66, 672 (1994) (citations omitted).

33.     Restrictions on political candidacy may "violate the Constitution because of their derivative effect on the right to vote." *Hutchinson v. Miller*, 797 F.2d 1279, 1282 (4th Cir. 1986) (citations omitted).

34.     When an irregularity in the election process was "intentional" and "erodes the democratic process," the due process clause of the Fourteenth Amendment may be violated. *Hendon v. N. Carolina State Bd. of Elections*, 710 F.2d 177, 182 (4th Cir. 1983) (citing *Gamza v. Aguirre*, 619 F.2d 449, 453 (5th Cir. 1980).

35.     As such, the right to candidacy is a constitutional right, pursuant to the First and Fourteenth Amendments, and cognizable as a claim under 42 U.S.C. § 1983.

36.     When misconduct by an elections official amounts to an erosion of the democratic process, the candidate's constitutional rights have been violated.

37.     The intentional destruction of the ballots by Snipes and the Supervisor of Elections constituted a deprivation of Mr. Canova's constitutional rights under the First and Fourteenth

Amendments of the Constitution, as well as a violation of 52 U.S.C. § 20701 and §§ 119.11(4) and 119.07(1)(h), Florida Statutes.

38.    As a direct and proximate result of the acts of Snipes and the Supervisor of Elections, Mr. Canova suffered damages including, but not limited to:  expenses incurred, lost wages, emotional distress, and damage to personal reputation.

WHEREFORE, Defendant Tim Canova respectfully requests that this court enter judgment against the Defendants for damages, interest, attorneys' fees, and court costs.

## COUNT II – CLAIM FOR VIOLATIONS OF ARTICLE VI OF THE FLORIDA CONSTITUTION COGNIZABLE UNDER 42 U.S.C. § 1983
### (against Snipes and Supervisor of Elections)

39.    Mr. Canova realleges and adopts, as if fully set forth herein, the allegations of paragraphs 1-27.

40.    "The abiding principle governing all election law in Florida is set forth in article I, section 1, Florida Constitution." *Palm Beach Cty. Canvassing Bd. v. Harris*, 772 So. 2d 1220, 1230 (Fla. 2000). Elections in Florida are regulated by law. *Id.* (citing Art. VI, § 1, Fla. Const.).

41.    Article VI of the Florida Constitution guarantees the right to run for office. *Ervin v. Collins*, 85 So. 2d 852, 856 (Fla. 1952) ("To hold one ineligible to run for office where neither the Constitution nor the statute does so in express terms is contrary to every democratic precept.").

42.    Although Article VI of the Florida Constitution has been amended since *Ervin*, Florida courts continue to refer to that case when considering the right to run for office in Florida. *See, e.g., Perez v. Marti*, 770 So. 2d 176 ("The lexicon of democracy condemns all attempts to restrict one's right to run for office.") (citing *Ervin*, 85 So. 2d at 858).

43.    "Each citizen has a fundamental right to run for elective office." *Republican Party v. Davis*, 18 So. 3d 1112, 1121 (Fla. 3d DCA 2009).

44.     As such, the right to candidacy is a right provided by the Florida Constitution, pursuant to Article VI of the Florida Constitution, and cognizable as a claim under 42 U.S.C. § 1983.

45.     When misconduct by an elections official amounts to an erosion of the democratic process, the candidate's constitutional rights have been violated.

46.     The intentional destruction of the ballots by Snipes and the Supervisor of Elections constituted a deprivation of Mr. Canova's constitutional rights under Article VI of the Florida Constitution, as well as a violation of 52 U.S.C. § 20701 and §§ 119.11(4) and 119.07(1)(h), Florida Statutes.

47.     As a direct and proximate result of the acts of Snipes and the Supervisor of Elections, Mr. Canova suffered damages. including, but not limited to:  expenses incurred, lost wages, emotional distress, and damage to personal reputation.

WHEREFORE, Defendant Tim Canova respectfully requests that this court enter judgment against the Defendants for damages, interest, attorneys' fees, and court costs.

## COUNT III – CIVIL CONSPIRACY COGNIZABLE UNDER 42 U.S.C. § 1983
### (against Snipes, Spencer, and Supervisor of Elections)

48.     Mr. Canova realleges and adopts, as if fully set forth herein, the allegations of paragraphs 1-27.

49.     Conspiracy by public officials to deprive a person of his or her civil rights is cognizable as a claim under 42 U.S.C. § 1983. *See, e.g., Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*, 172 F.3d 238, 254 (3d Cir. 1999).

50.     A party seeking to state a claim for conspiracy under 42 U.S.C. § 1983 must allege the existence of a conspiracy involving state action and a deprivation of his or her civil rights in

furtherance of the conspiracy. *Marchese v. Umstead*, 110 F. Supp. 2d 361, 371 (E.D. Pa. 2000) (citations omitted).

51.     Florida courts likewise recognize a cause of action for civil conspiracy. *See, e.g.,* *Walters v. Blankenship*, 931 So. 2d 137, 140 (Fla. 5th DCA 2006).

52.     Snipes, Spencer, and the Supervisor of Elections conspired to deprive Mr. Canova of his constitutional rights as described *supra*.

53.     Snipes, by way of authorizing the destruction of the ballots and records, and Spencer, by way of carrying out the act of destruction of the ballots and records, conspired to deprive Mr. Canova of his rights.

54.     The actions of Snipes, Spencer, and the Supervisor of Elections were taken despite the existence of ongoing litigation concerning the exact ballots and records that were destroyed.

55.     Snipes, Spencer, and the Supervisor of Elections conspired to violate 52 U.S.C. § 20701 and §§ 119.11(4) and 119.07(1)(h), Florida Statutes.

56.     Mr. Canova was actually damaged by the actions taken in furtherance of the conspiracy.

WHEREFORE, Defendant Tim Canova respectfully requests that this court enter judgment against the Defendants for damages, interest, attorneys' fees, and court costs.

## **DEMAND FOR JURY TRIAL**

The Plaintiff, TIM CANOVA, demands trial by jury on all issues so triable.

DUTTON LAW GROUP, P.A.
P. O. Box 260697
Tampa, Florida   33685-0697
(813) 247-2222
Designated email:
Service.swd@duttonlawgroup.com
Service.csd@duttonlawgroup.com
Service.aas@duttonlawgroup.com

SCOTT W. DUTTON, ESQUIRE
Florida Bar No:  486019
CHRISTOPHER S. DUTTON, ESQUIRE
Florida Bar No: 115714
ANDREW A. STEADMAN, ESQUIRE
Florida Bar No:   119402

**Leonard Collins**

| | |
|---|---|
| **From:** | Lulu Freisdat <contact@shugahworks.com> |
| **Sent:** | Friday, March 10, 2017 2:01 PM |
| **To:** | 'Dolly Gibson' |
| **Subject:** | Public Records Request |

Dear Dolly -

This is a public records request under Chapter 119, Florida Statutes, relating to the production of records from the August 30, 2016 Democratic primary in the Broward County portion of Florida's 23rd Congressional District.

Records requested:

1.       We seek to examine all the Broward County ballots of Florida's 23rd Congressional District from the August 30, 2016 Democratic primary as they are stored. We request they all be brought to the same location, with as minimal disruption to their current state as possible. We specifically request that the Supervisor of Elections office not re-count or sort them prior to our meeting.

2.       We seek to electronically scan 100% of the ballots cast in twelve precincts of our choosing from the above-stated election. We request that both sides of the ballots be scanned in PDF format.

3.       We request 100% of all the ballots from the August 30, 2016 Democratic primary in the Broward County portion of Florida's 23rd Congressional District be produced: including early voting, election day voting, mail-in voting, disabled voting, provisional or affidavit ballots, military or overseas ballots, void ballots, write-in ballots and any other form of cast ballot not mentioned.

4.       We will rent or purchase a scanning machine and have it brought to the location where the ballots are stored. Please advise us if you have any specifications as to the type of scanning machine that must be utilized. We have located an off-the-shelf scanner that can be fed quickly to minimize the time and effort of your staff. We may request to add a second scanner and scanning team, to expedite the process. We understand that the scanning needs to take place on your premises.

5.       We will pay for the scan of the precincts in advance by providing the total number of ballots that we intend to scan, or paying for the staff time / per day in advance. (Staff costs were quoted to us as one senior staff member at $48/hour, and other junior staff members at a lower cost per hour.) We will choose the precincts that we wish to scan after viewing the complete set of ballots. We will provide each precinct as the last one is complete. We do not anticipate any cost to this part of the records request besides the staff time. If there are other costs that will arise, please notify us immediately. Since we are only scanning twelve precincts, we hope the job can be completed in one or two days at most.

6.       We understand the ballots must be handled by your staff. We will provide at least 2 volunteers for each scanning team, to watch the scanning in close enough proximity to view how each ballot was cast. Observers will be respectful of the process and not impede it in any way. Observers may ask for the process to be temporarily paused or stopped if they are concerned about an issue.

1



One of the volunteers will call out the votes to least 2 volunteers who will operate laptops attached to each scanner. Those volunteers will verify that each ballot has been scanned correctly. That is a minimum of 4 volunteers per scanning team. Additionally we will have individuals such as myself, our attorney, Tim Canova, and another professional present. We understand that no one can touch the ballots except your staff. To the extent that we have a question about a particular ballot - we will request that it be set aside for further examination. Volunteers or observers may ask for a ballot to be re-scanned if it did not scan correctly.

7.      We request to have the following question answered at the soonest date possible in order for us to adequately prepare for the scanning, and make sure that we choose a scanner that is appropriate for the ballots:

a) Is there a unique identifying number on each ballot?

b) What size are the ballots?

c) Have they been stored together by precinct, or are the vote-by-mail and other ballots like military and provisional stored elsewhere?

d) Are they well-labeled by precinct?

e) How much time will it take to locate each precinct?

f) What is their general location? For example are they all in a warehouse?

g) Are they in neat stacks, or in a more uneven state, from having been in a ballot bag for example?

8.      We request a physical copy of a sample ballot from the August 30th, 2016 Democratic primary of Florida's 23rd Congressional District as soon as possible to help us prepare for the scanning.

9.      We request to retain the digital scans of the ballots on a hard drive, USB stick, or laptop. We will make a duplicate backup of the files on the premises. We will provide a copy of the digital scans to your office if you would like one. We reserve the right to add a layer of encryption to the digital scans to insure that the images cannot be altered. We would give your office whatever key was necessary to access the images.

10.     Once our team is present, we request that for each precinct, the ballots be divided into four stacks. Stack 1: Debbie Wasserman Schultz votes; Stack 2: Tim Canova votes; Stack 3: Void ballots; Undervotes; Overvotes; write-in candidates; Stack 4: any ballots that need further examination or follow-up. We request each stack be scanned and confirmed scanned accurately in batches of 25. We believe this will be the quickest way to scan and confirm the accuracy of the scans. At our discretion, we request the option to have the ballots for each precinct scanned without sorting if the outlined process becomes too time-consuming.

11.     If there is no unique identifying number on each ballot, we request that a temporary unique identifying number be placed on each ballot with a sticker, immediately prior to its being scanned. We can provide those numbers on a roll so that the numbering process goes quickly.

12.     We request a copy of the poll tapes from each of the machines from each of the precincts that we select to scan.

13.     We request to videotape the scanning process.

14.     We request the complete digital file(s) of the EVID of all the voters who voted in the August 30, 2016 Democratic primary in the Broward County portion of Florida's 23rd Congressional District, so that we can verify that the number of ballots for each precinct is complete. We request this file or files in the form or forms in which it is ordinarily maintained

2

including any and all metadata associated with the file(s), as well as a form that is easy to read for anyone not familiar with the software, or not possessing the software.

15.     We request a copy of the envelope with the signature of each vote by mail ballot in the precincts that we scan. We request a copy of each fax of the military and overseas ballots in the precincts that we scan, and the duplicated ballot with the matching serial number if one was created.

16.     We request a copy of each provisional ballot in the precincts that we scan, as well as any information pertaining to whether the provisional ballot was counted or not and why.

17.     We request documents confirming that the number of people who voted matches the number of ballots in each precinct.

18.     We request chain of custody documentation and seals showing that the ballots were secure at all times following their being cast or received, up until the time of the Public Records Request viewing. We request written manuals or emails describing the chain of custody protocols of the Broward County Supervisor of Elections Office and documentation that they are being followed in accordance with the laws of the State of Florida.

19.   We request an electronic copy of the Cast Vote Record (CVR) of the vote from the August 30, 2016 Democratic primary in the Broward County portion of Florida's 23rd Congressional District, in the form or forms in which they are ordinarily maintained including any and all metadata associated with those files.

20.   We request to know all versions of ES&S software running on the voting machines for the August 30th 2016 primary.

21.   We request that all information be provided digitally on hard drives or flash drives that we can provide to your office, or on a low cost medium, such as a CD disk. Please do not photo copy paper documents, but instead scan and provide them digitally.

22.   All of the above records must be provided in the native format or medium in which they are maintained.  See F.S. 119.01(2)(f).

For purposes of this request, the term "records" or "materials" includes all tangible or intangible things of every nature that contain information, including, without limitation, agreements, analyses, appointment records, audio recordings (whether transcribed or not), bills, books, books of account, charts, checks, communications, computer cards, computer printouts, computer programs, contracts, correspondence, diaries, disks, diskettes, drafts, drawings, electronic mail, including instant message, text messages and social media such as, but not limited to Facebook and Twitter postings, financial statements, forms, graphs, handbooks, invoices, itemizations, journals, leases, ledgers, licenses, manuals, maps, memoranda, minutes, notes (whether handwritten or otherwise), opinions, orders (of courts or administrative officers or awards in arbitration), permits, photographs, plans, pleadings, proofs, publications, receipts, recordings, records, reports, sketches, specifications, spreadsheets, statements, studies, summaries, tapes, telefaxes, telegrams, telexes, other telecommunication materials, video recordings, writings of every kind, and all other data compilations from which information can be obtained or translated through detection devices or otherwise into reasonably usable form, including all such items in the possession, custody, or control of any of your attorneys, accountants, officers, employees, or agents wherever located.

The subject records should be produced as quickly as possible. If production of any of the requested records will require in excess of seven days from the date of this letter, please produce all records that you can locate responsive to the request as quickly as possible, and additional production(s) can be arranged for later dates.

If any of the requested records cannot be produced because you feel they are not subject to inspection under the applicable law or under any claim of privilege, please preserve these records, and provide us with a statement identifying the records (by date and nature) and the statutory/legal basis for not producing them. If any records have been lost, destroyed or rendered inaccessible, please provide us with a statement identifying the date and nature of those records.

We understand there may be a reasonable charge for the records production. We assure that payment will be made promptly if an invoice is provided. Please notify us immediately of what these reasonable charges will be.

Please contact me at the above email, or at 917.543.2125, regarding scheduling, payment, delivery, other logistical issues, the clarification or prioritization of any of these requests, or with any questions or concerns.

Thank you for your prompt attention to fulfilling this request. The Supervisor of Elections' office has been helpful, and I continue to be grateful for your professionalism and cooperation.


Kind Regards,
Lulu

Lulu Friesdat | @LuluFriesdat
Creative Director | Shugah Works
917.543.2125



SUN TRUST BANK BLDG.
215 SOUTH MONROE STREET
SUITE 400
TALLAHASSEE, FL 32301
TELEPHONE: 850.681.6810
FAX 850.681.9792
WWW.BROADANDCASSEL.COM

May 9, 2017

**VIA EMAIL ONLY**
Burnadette Norris Weeks
Burnadette Norris Weeks P.A.
401 North Avenue of the Arts
Fort Lauderdale, Florida 33311

      Re:   Public Records Request # 2077

Dear Burnadette:

      Please allow this letter to serve as a reply to your email of May 1, 2017.

      We represent Tim Canova in this public records request. As you know, Mr. Canova was a candidate in the August 30, 2016 primary election. Mr. Canova seeks access to public records (including cast ballots) from the August 30, 2016 election so as to conduct an audit and review of election returns in certain precincts. To the extent that your responses to Mr. Canova are different than your responses to his agent, Ms. Freisdat, please advise us within the next five business days so that we may address any discrepancies.

I.    **Requests to Review Public Records under Florida Statute 119**

a.    **Requests 2, 4, 5, and 9, seek scanning/copying of public records under Chapter 119, Florida Statutes.**

      We have requested scans of ballot images from the August 30, 2017 primary. Additionally, in our April 7, 2017 response to your office's reply to our March 10, 2017 public records request, we advised:

> Regarding items #2, 4, 5, 9, 13 and the statements that scanning is not a part of public record procedures, we respectfully request that your office reconsider this response. There is no meaningful difference between copying documents and scanning documents aside from whether the record is on paper or whether the document may be viewed electronically. The actual act of running the ballot through a machine that photocopies or scans is identical. Your office has not provided any analysis as to why scanning the records would be outside the spirit of a public records request. Additionally, we have advised that we will incur the costs of having the scanning machine of your office's choice brought in for your staff to utilize (if your office does not already have a photocopy machine that is capable of scanning). Scanning documents is an industry standard, it allows us to obtain the records and it allows the records to be bates stamped in order without in anyway touching the actual records. There is no question that the production of scans instead of photocopies would be beneficial to us, it would reduce our costs of shipping and we would not have to pay for the

EXHIBIT

B

Burnedette Norris Weeks
May 9, 2017
Page 2

records to be scanned after they are copied (which we would otherwise be forced to do)---this too supports our request as in the sprit of open access to records. We believe that this is a reasonable request, to the extent that there are any reasonable accommodations that your office requires in order to provide for scanning, we are amenable to working with you. However, if your response is simply no, without any further explanation, we respectfully suggest that that position is unreasonable and outside the spirit of open access to public records.

In your May 1, 2017 response, you state, "Section 119.07(5), F.S., prohibits any person other than the supervisor of elections or the supervisor's employees from touching the ballots." We have agreed to pay the costs of employees from the Supervisor of Elections office to touch the ballots and to scan their images. However, your email also states, "scanning of ballots by your client will not be permitted." Additionally, your email provides the following responses to Public Records Requests #2077, numbers 2, 4, and 5:

2.   We seek to electronically scan 100% of the ballots cast in twelve precincts of our choosing from the above-stated election. We request that both sides of the ballots be scanned in PDF format.

*Response: We discussed that scanning is not permitted.*

4.   We will rent or purchase a scanning machine and have it brought to the location where the ballots are stored. Please advise as to whether you have any specifications as to the type of scanning machine that must be utilized. We have located an off-the-shelf scanner that can be fed quickly to minimize the time and effort of your staff. We may request to add a second scanner and scanning team, to expedite the process. We understand that the scanning needs to take place on your premises.

*Response: No scanning of ballots will be permitted.*

5.   We will pay for the scan of the precincts in advance by providing the total number of ballots that we intend to scan, or paying for the staff time / per day in advance. (Staff costs were quoted to us as one senior staff member at $48/hour, and other junior staff members at a lower cost per hour.) We will choose the precincts that we wish to scan after viewing the complete set of ballots. We will provide each precinct as the last one is complete. We do not anticipate any cost to this part of the records request besides the staff time. If there are other costs that will arise, please notify us immediately. Since we are only scanning twelve precincts, we hope the job can be completed in one or two days at most.

*Response: Since this request relates to scanning, be advised that scanning is not permitted.*

We simply seek to observe the scanning process and do not propose to touch any ballots. We stated that to the extent that your office sought a reasonable accommodation, in order to provide for scanning/copying of the public records to advise and that we would work out the issue. Specifically, if your objection is to scanning images as opposed to photocopying them, we would work to resolve the matter and would accept photocopies[1].

---

[1] Scanning has become the industry standard for document production, scanning and uploading documents is the standard in Florida courts and is a technology that was not contemplated when the statute was written. We would argue that scanning and photocopying are the identical practice for the purpose of compliance with a public records request.

Burnedette Norris Weeks
May 9, 2017
Page 3

Our understanding of your response is simply no—there are no circumstances where we may obtain copies/scans of ballots cast in the August 30, 2016 primary election. However, under Florida Statute 119 (1)(a), "Every person who has custody of a public record shall permit the record to be inspected and copied by any person desiring to do so, at any reasonable time, under reasonable conditions, and under supervision by the custodian of the public records." You have cited to no case law or statutory support that provides any exception to the production of the records sought under Chapter 119, Florida Statutes and we know of none. Ballots are public records and they should be made available for copying/electronic scanning under Chapter 119, Florida Statutes.

    **b.** **Request 13, seeks a Certified Court Reporter to be given access to the meeting where ballots are reviewed and seeks a written transcript of the meeting.**

Request 13 sought:

    13.    We request to videotape the scanning process.

    *Response: The review of the ballots cannot be videotaped for the reason that they contain exempt information.*

In response, your April 3, 2017 response stated in response to Request number 13; "No videotaping." We further clarified our request in our April 7, 2017 email to state:

    Further, we have requested that the meeting where the records are copied be videotaped. This meeting would be a public open meeting, we are prepared to have a certified court reporter/videographer conduct the videotaping and do agree to provide a copy of any tape or transcript we receive to your office at our cost. Without further explanation from your office, believe that your position is not reasonable. That said, we will work with you to attempt to resolve this issue, if possible.

Our understanding is that the ballots cast in the August 30, 2016 election do not contain exempt information. Counted ballots are not tied to individual voters, rather, the exempt information is contained on envelopes that will be reviewed (please see c. 1 below). Additionally, a certified court reporter would establish a shot of the room and the video would not be close up video of any exempt information, simply it would be a video of individuals reviewing what could be exempt information, this would not be different than a video-taped deposition or video-taped court proceeding. It simply seeks to provide a record of the activity that takes place when the ballots are inspected and/or are scanned. To the extent that this additional information serves to change your position on this issue, please advise.

    **c.** **Excessive Costs**

In response to our public records request to review ballots cast in the August 30, 2016 election, the Broward County Supervisor of Elections provided a bill seeking $71,868.87 in costs.

Burnedette Norris Weeks
May 9, 2017
Page 4

1. ***Request 15 has been amended, seeking only the inspection of vote by mail envelopes.***

In response, we amended Request 15 in our April 7, 2017 response to your April 3, 2017 reply to our March 10, 2017 public records request we amended the request 15 (in light of the $38,667.00 costs) to read as follows:

> In light of the response, we are amending our request. Our new request is itemized here, and in light of the change, we request a new estimate:
>
> 15.   We request to view each envelope with the signature of each vote by mail ballot in the precincts that we scan. We request to view each fax of the military and overseas ballots in the precincts that we scan, and the duplicated ballot with the matching serial number if one was created. We will take some notes during the viewing.
>
> We are not asking to examine all of the VBM, military and overseas ballots, just the ones in the 12 precincts that we will identify when we arrive. Since this is only for 12 precincts, we think the cost of $38,667 is excessive. We point you toward the laws regarding costs of Florida records requests that say specifically, "All service charges for inspecting public records must be REASONABLE." (Emphasis included in the code.)
>
> http://myfloridalegal.com/webfiles.nsf/wf/kgrg-7q2jh2/$file/fees.pdf
>
> We would prefer an estimate of the per hour cost, and an estimate of the time it will take. We believe these ballots could be examined in 2 days.

Nevertheless, the May 1, 2017 response seems to be to the initial request and not the amended request:

> Providing copies of voter signatures is not permitted by Florida law. However, the technology staff is in communications with the Absentee Ballot staff and it is my understanding that they are exploring ways to pull images for absentee ballots only. This would require the redaction of signatures electronically. Again, this potential process is only available for the absentee ballots. We should know by the end of this week whether this process can be achieved and an estimated cost. Know that this process will still be time consuming.

Our amended request does not seek copies of signatures and we do not wish to incur the costs of redaction of these materials, we simply wish to inspect certain vote by mail envelopes. Accordingly, this request for $38,667.00 should be stricken.

2. ***Requestors should not be charged for retrieving ballots from storage.***

Public records requests 1 and 3 sought:

> 1. We seek to examine all the Broward County ballots of Florida's 23rd Congressional District from the August 30, 2016 Democratic primary as they are stored. We request they all be brought to the same location, with as minimal disruption to their current state as possible. We specifically request that the Supervisor of Elections office not re-count or sort them prior to our meeting.

Burnedette Norris Weeks
May 9, 2017
Page 5

3. We request 100% of all the ballots from the August 30, 2016 Democratic primary in the Broward County portion of Florida's 23rd Congressional District be produced: including early voting, election day voting, mail-in voting, disabled voting, provisional or affidavit ballots, military or overseas ballots, void ballots, write-in ballots and any other form of cast ballot not mentioned.

In response, my clients were asked to pay $30,933.60 for two directors and six staff members to each work on this for six hours a day for four weeks (960 hours of work). Of course, we objected to this request noting that this demand for fees was unreasonable. In response, in your May 1, 2017 email you provides two responses:

1. *Response: The BSOE has agreed to remove costs associated with transporting hundreds of ballot boxes from one location within the BSOE's warehouse to another.*
2. *Response: See prior response from BSOE dated March 23, 2017. Minus the transporting costs, everything else is the same at this time.*

Simply put, we are at a loss as to what your office will charge for the inspection and production of public records. No distinction has been made relative to the production of the records in question. We would suggest a more reasonable number would be 6 staff members at $29.32 an hour for 16 hours (we intend on reviewing the records over the course of two eight hour days) ($2814.72), 1 director at $42.92 for 16 hours ($686.72) and 1 director at $38.94 for 16 hours ($623.04) for a total cost of $4124.48.

Given that we previously amended Request number 15 and the cost for reviewing those records would be encapsulated within the two days of anticipated records review and that your office has dropped its demand that my clients pay for the retrieval of public records the initial demand of $71,868.87 should actually be for $4124.48. To the extent that we cannot agree, we will remain deeply concerned that these costs are excessive and outside of what is appropriate for a public entity to charge for the inspection and review of public records.

**d. Request 7, seeks information relative to the storage of ballots.**

At request number 7, we also requested information on the storage of ballots. While your office maintains that the public records are not subject to being copied or scanned, my clients are still entitled to a response to this request:

7. We request to have the following question answered at the soonest date possible in order for us to adequately prepare for the scanning, and make sure that we choose a scanner that is appropriate for the ballots:

a) Is there a unique identifying number on each ballot?

b) What size are the ballots?

c) Have they been stored together by precinct, or are the vote-by-mail and other ballots like military and provisional stored elsewhere?

d) Are they well-labeled by precinct?

Burnedette Norris Weeks
May 9, 2017
Page 6

    e) How much time will it take to locate each precinct?

    f) What is their general location? For example are they all in a warehouse?

    g) Are they in neat stacks, or in a more uneven state, from having been in a ballot bag for example?

    *Response: Since this request relates to scanning, be advised that scanning is not permitted.*

    e.   <u>**Request 6, seeks observers to be permitted to attend the inspection/scanning or copying of ballots.**</u>

    While we disagree concerning whether scanning is permissible, we otherwise agree to limit the number of observers to 4.

    II.    <u>**Resolved/Withdrawn Public Records Requests**</u>

    a.   <u>**Requests 10 and 11 withdrawn.**</u>

    Requests Number 10 and 11 were not addressed. Nevertheless, we withdraw these requests in light of your response. However, we would note that to the extent that the ballot images are scanned we can electronically bates stamp the public records without in any way changing the integrity of the original ballots. Electronically bates stamping the records would allow my client to conduct an audit of the records in question without incurring the significant expense of paying for the time of employees of the Supervisor of Elections Office to conduct a review of the ballots in question.

    b.   <u>**Resolved Requests.**</u>

    Requests 8, 6, 14 17 and 18 are resolved and we will pay the costs provided and pick up these materials shortly.

    Thank you for your attention to this matter. Given the length of time that has already elapsed in consideration of these public records requests, time is of the essence. We look forward to receiving your response in the next five days.

                Sincerely,

                Leonard Collins

LMC

IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, FLORIDA

TIM CANOVA

     Plaintiff,       **CASE NO.: CACE-17-010904**
                **Division: 21**

                IMMEDIATE HEARING
                REQUESTED PURSUANT TO Fla.
                Stat. § 119.11

v.

BRENDA SNIPES, IN HER OFFICIAL
CAPACITY AS SUPERVISOR OF ELECTIONS,
BROWARD COUNTY, FLORIDA

      Defendant,
_____/

### <u>Verified Amended Complaint to Compel Production of Public Records<br>Pursuant to Florida's Public Records Act</u>

    COMES NOW, TIM CANOVA, Plaintiff who hereby sues Defendant, Brenda Snipes in

her official capacity as Supervisor of Elections, Broward County, Florida and states:

    1.  This action concerns the Defendant's refusal to produce public records for copying

and/or scanning pursuant to Article I, Section 24 of the Florida Constitution and Chapter 119,

Florida Statutes, (herein collectively the "Public Records Act").

    2.  Plaintiff seeks an immediate hearing of this matter as required by the Public

Records Act. See § 119.11(1), Florida Statutes.

    3.  This Court has subject matter jurisdiction pursuant to Article V, Section 5(b), of

the Florida Constitution and the Public Records Act.

    4.  This Court has personal jurisdiction over the Defendant because the Defendant is

the Supervisor of Elections for Broward County, Florida.



5.      The cause of action in the instant case accrued in Broward County, Florida, therefore this Court is the appropriate venue for the vindication of the Plaintiffs' civil rights.

6.      Plaintiff, Tim Canova, resides in Broward County, Florida and is a "person" as that term is used in the Public Records Act.

7.      Plaintiff Canova was a candidate for U.S. Congress for Florida's 23rd Congressional District in the August 30, 2016 primary election in Broward County, Florida.

8.      Defendant, Brenda Snipes, in her official capacity as Supervisor of Elections of Broward County, Florida is an "agency" as that term is used in the Public Records Act.

9.      On March 10, 2017, Lulu Friesdat, an agent of Mr. Canova, made a public records request to Defendant for records to be produced pursuant to Chapter 119, Florida Statutes. The requests were numbered 1 through 22. (Please see the March 10, 2017 public records request attached as "Exhibit A").

10.     On March 10, 2017, Dolly Gibson, Broward Supervisor of Elections Registration Clerk, confirmed receipt of the March 10, 2017 public records request (although her email incorrectly states that the request was posted on March 2, 2017), assigned the public records request a number (#2077) and stated, "We will contact you as soon as we have researched the request and let you know of the cost as well as the availability of the requested information. (Please see Ms. Gibson's email attached as "Exhibit B").

11.     Mr. Canova also requested all records sought under public records request #2077 on May 9, 2017.   (Please see Mr. Canova's May 9, 2017 letter attached as "Exhibit C").

12.     On April 3, 2017, Defendant emailed a letter and an invoice responding to the Plaintiffs Public Records Request (Defendant also agreed to produce certain items that are not the subject of this lawsuit).

13.     In the letter, the Defendant states that ballots cast in the August 30, 2016 primary election and stored in the possession of the Broward County Elections requested under Chapter 119 are not subject to being scanned. (A copy of the April 3, 2017 letter and invoice is attached hereto as "Exhibit D").

14.     On April 7, 2017, Ms. Friesdat responded arguing that the records sought are subject to copying/scanning (A copy of the April 7, 2017 email is attached hereto as "Exhibit E").

15.     On April 13, 2017 the parties attorneys conducted a telephone conference in an effort to resolve outstanding differences and Counsel for the Supervisor of Elections took the position that ballots did not have to be produced pursuant to Section 119.07(5).

16.     On May 1, 2017, counsel for the Supervisor of Elections sent an email once again denying Plaintiff's access to scan the public records (Please see attached as "Exhibit F", the May 1, 2017 email from Burnadette Norris-Weeks, Esq., Counsel to the Supervisor of Elections, Broward County). In the email, Ms. Norris Weeks made clear that no the ballots would not be duplicated by stating:

> As we discussed during our telephone conversation on 4/13/17, scanning of ballots by your client will not be permitted. **Your client, however, is entitled to inspect the ballots and may take notes regarding the number of votes cast.** Section 119.07(5), F.S., prohibits any person other than the supervisor of elections or the supervisor's employees from touching the ballots.

17.     On May 9, 2017, the undersigned counsel replied and stated:

> We simply seek to observe the scanning process and do not propose to touch any ballots. **We stated that to the extent that your office sought a reasonable accommodation, in order to provide for scanning/copying of the public records to advise and that we would work out the issue. Specifically, if your objection is to scanning images as opposed to photocopying them, we would work to resolve the matter and would accept photocopies. Our understanding of your response is simply no--- there are no circumstances where we may obtain copies/scans of ballots cast in the August 30, 2016 primary election.** However,

under Florida Statute 119 (1)(a), "Every person who has custody of a public record shall permit the record to be inspected and copied by any person desiring to do so, at any reasonable time, under reasonable conditions, and under supervision by the custodian of the public records." You have cited to no case law or statutory support that provides any exception to the production of the records sought under Chapter 119, Florida Statutes and we know of none. Ballots are public records and they should be made available for copying/electronic scanning under Chapter 119, Florida Statutes. (emphasis added).

(Please see Exhibit G, letter from Leonard Collins to Burnadette Norris-Weeks, Esq.)

18.     On May 23, 2017, counsel for the Defendant, Ms. Weeks, replied to Plaintiff's May 9, 2017 email by denying Plaintiff the right to photocopy, ignoring the offer to provide for any reasonable accommodation and stating that the ballots would be made a part of the "viewing process". (See Exhibit H, email from Burnadette Norris-Weeks, Esq. to Leonard Collins, Esq).

19.     Defendant's May 23, 2017 email also explicitly acknowledges that the public records request was amended by Plaintiff Canova.

20.     Defendant agrees that the records in question are public records and has offered Plaintiff an in person viewing of the records at a public meeting, but will not allow Plaintiff to obtain copies/scans of the records. Additionally, Defendant will not permit Plaintiff to retain a court reporter, at their expense, to transcribe and videotape the public meeting.

21.     Plaintiff has attempted to work with the Supervisor of Elections over the course of several months to resolve issues, however the question as to whether ballots from the August 30, 2016 primary are public records subject to copying/scanning cannot be resolved between the parties.

22.     Section 119.07(1)(a), Florida Statutes, requires the Defendant to permit public records in its custody to "be inspected and copied by any person desiring to do so, at any reasonable time, under reasonable conditions, and under supervisions by the custodian of the public records."

23.     The Defendant has failed to comply with this statutory requirement, despite the fact that requested records do not fall under any statutory exemption.

24.     Florida Statute 119.07(e) states: If the person who has custody of a public record contends that all or part of the record is exempt from inspection and copying, he or she shall state the basis of the exemption that he or she contends is applicable to the record, including the statutory citation to an exemption created or afforded by statute.

25.     Defendant's "No Scanning" responses on Exhibits D, F, and H violates Florida Statute 119.07(e).

26.     The Attorney General's office issued a written opinion considering the issue at hand, (whether the public has a right to obtain photocopies of cast ballots even though §119.07(5), Florida Statutes, states that only supervisors of elections or their staff may touch the cast ballots) and found that ballots are public records that are subject to being copied under Chapter 119, See Fla. AGO 2004-11, 2004 WL 608778.

27.     Plaintiff has no adequate remedy at law.

28.     All conditions precedent to this action have occurred or have been excused or waived.

29.     The Public Records Act provides that "if a civil action is filed against an agency to enforce the provisions of this chapter and if the court determines that the agency unlawfully refused to permit a public record to be inspected or copied, the court shall access and award, against the agency responsible, the reasonable costs of enforcement including reasonable attorneys' fees." See § 119.12, Fla. Stat.

WHEREFORE, Plaintiff respectfully requests this Court to set an expedited hearing, declaring Defendant to be in breach of its constitutional and statutory duties to permit access to

the public records, compelling Defendant to provide access to these public records and awarding

Plaintiff's costs, including reasonable attorneys' fees, in pursuing this action to enforce the Public

Records Act pursuant to Section 119.12, Florida Statutes.

RESPECTFULLY SUBMITTED this 16th day of October, 2017.

**BROAD AND CASSEL**

BY: _____

LEONARD M. COLLINS,
FBN: #423210
lcollins@broadandcassel.com
sbaxter@broadandcassel.com
FRANK P. RAINER
FBN: #436518
215 S. Monroe Street, Suite 400
Tallahassee, FL 32301
(850) 681-6810
*Attorneys for Tim Canova*

## **VERIFICATION OF AMENDED COMPLAINT AND CERTIFICATION**

STATE OF FLORIDA        )
                        )
COUNTY OF BROWARD   )

Plaintiff, Tim Canova, having first been duly sworn and upon oath, deposes and says as follows:

1.  I am a plaintiff in a civil proceeding.

2.  I have read the above-entitled civil Complaint, prepared by my attorneys and I believe that all of the facts contained in it are true, to the best of my knowledge, information and belief formed after reasonable inquiry.

3.  I believe that this civil Complaint is well grounded in fact and warranted by existing law or by a good faith argument for extension, modification, or reversal of existing law.

4.  I believe that this civil Complaint is not filed for any improper purpose, such as to harass any Defendant, cause unnecessary delay to any Defendant, or create a needless increase in the cost of litigation to any Defendant named in the Complaint.

5.  I have filed this civil complaint in good faith and solely for the purposes set forth in it.


Subscribed and sworn before me           _____
this _____ day of _____ 2017.          Tim Canova

My commission expires:                    _____
                                          Notary Public

                                          Proof of ID.:_____

Filing # 63750474 E-Filed 11/03/2017 05:39:18 PM

IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, FLORIDA

TIM CANOVA

        Plaintiff,                       CASE NO.: CACE-17-010904
                                           Division: 21

v.

BRENDA SNIPES, IN HER OFFICIAL
CAPACITY AS SUPERVISOR OF ELECTIONS,
BROWARD COUNTY, FLORIDA

        Defendant,

---

### PLAINTIFF'S AMENDED MOTION TO COMPEL RESPONSES TO PLAINTIFF'S FIRST REQUESTS FOR PRODUCTION

      Plaintiff, Tim Canova (hereinafter "Plaintiff"), by and through its undersigned counsel, and pursuant to Rule 1.380 of the Florida Rules of Civil Procedure, hereby moves to compel responses to Plaintiff's First Request for Production from Defendant, Brenda Snipes, in her official capacity as Supervisor of Elections, Broward County, Florida (hereinafter "Defendant"). In support thereof, Plaintiff states:

### Defendant Snipes has not responded to Plaintiff's First Requests for Production.

    1.  Pursuant to Rule 1.280(b)(1) of the Florida Rules of Civil Procedure, "parties may obtain discovery regarding any matter, not privileged, that is relevant to the subject matter of the pending action, whether it relates to the claim or defense of the party seeking discovery or the claim or defense of any other party."

    2.  On July 14, 2017, Plaintiff served its Requests for Production on Defendant, which are



EXHIBIT
D

attached hereto as "Exhibit A".

3.   A response to Plaintiff's First Request for Production was due on August 18, 2017. Defendant has not filed any response to Plaintiff's First Request for Production.

4.   Pursuant to Rule 1.350(b) of the Florida Rules of Civil Procedure, a party may move for an order under Rule 1.380 for the opposing party's failure to respond to or objections to interrogatories or requests for production.

5.   In light of Defendant's failure to timely respond to Plaintiff's Request for Production of Documents, after proper service of the Request, Defendant hereby requests that the Court take appropriate action as permitted by Rule 1.380 (d), Florida Rules of Civil Procedure, including the entry of the following orders:

> (A)  An order that the matters regarding which the questions were asked or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order.

> (B)  An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence.

> (C)  An order striking out pleadings or parts of them.. . or rendering a judgment by default against the disobedient party.

Fla. R. Civ. P. 1.380 (b) (2) (A), (B) and (C).

9.   During the hearing on the Motion to Dismiss, counsel for the Defendant stated to the Court that the public records, specifically the ballots cast in the August 30, 2016 primary election would be made available for inspection and that Plaintiff Canova could choose which precincts would be photocopied.

10.   Counsel for Plaintiff Canova specifically requested the amount of fees sought for the inspection and copying of the public records.  (See Exhibit B).

11.     No response was forthcoming from counsel for the Plaintiff.

12.     Plaintiff Canova sent the Supervisor of Elections, Broward County a check in the amount of $5,586.00 to inspect and copy the ballots. (See Exhibit C).

13.     As recently as Friday October 27, 2017 Counsel for Supervisor of Elections stated that the public records would be inspected and copied, in response to Plaintiff Canova's payment to inspect and copy the public records. (Highlighted portions of Exhibit C).

14.     Nevertheless, after maintaining that scanning is outside of what is provided for under Florida Public Records laws for more than six (6) months, Defendant claims that she scanned all ballots cast in the August 30, 2016 primary election. This is not what was sought by the Plaintiff's public records requests.  Plaintiff sought to inspect all cast ballots and the ability to duplicate certain cast ballots of the Plaintiff's choosing.

15.     Instead of providing for an inspection of the cast ballots, as sought by the public records request, the Defendant (without any notice to Plaintiff) claims to have undertaken the task of scanning all ballots cast in the election and Plaintiff was never told that this procedure would occur prior to the inspection.

16.     Further, Defendant sent counsel for Plaintiff a bill for the scanning of all ballots cast in the primary election, despite the fact that this expenditure was unauthorized by Plaintiff.  See Attached as Exhibit D.

17.     Defendant has not permitted Plaintiff to inspect the actual cast ballots as is required under Florida law.

18.     Moreover, Plaintiff hereby requests that the Court require Defendant to pay the reasonable expenses caused by its failure to respond to Plaintiff's discovery requests, including costs incurred as a result of Defendants claim that Plaintiff could inspect and duplicate public records on

November 1 and 2, 2017 when public records were not available for inspection. Additionally, Plaintiff seeks its attorneys' fees and its expenses. Fla. R. Civ. P. 1.380 (d).

19.     Furthermore, in the event the Court determines that, instead of or in addition to the relief requested herein, that Defendant should provide the documents requested in Plaintiff's First Request for Production, Plaintiff requests that the Court enter an order precluding Defendant from asserting any objection to any of Plaintiff's Requests. Accordingly, as the result of Defendant's failure to timely respond to Plaintiff's First Requests for Production, Defendant should be precluded from asserting any objection to the discovery requested and full and complete disclosure of the requested documents should be provided by Plaintiff See American Funding Limited v. Hill, 402 So.2d 1369 (Fla. 1st DCA 1981) (holding that trial court did not abuse its discretion in granting motion to compel without considering untimely objections raised by responding party); Adventist Health System/Sunbelt Health v. Judge, 739 So.2d 695, 696 (Fla.App. 5 Dist.,1999).

## IMMEDIATE HEARING

Section 119.11(1), F.S., mandates that actions brought under Ch. 119 are entitled to an immediate hearing and take priority over other pending cases. See *Matos v. Office of the State Attorney for the 17th Judicial Circuit*, 80 So. 3d 1149 (Fla. 4th DCA 2012) (an "immediate hearing does not mean one scheduled within a reasonable time, but means what the statute says: immediate").

## CONCLUSION

WHEREFORE, Plaintiff Canova hereby requests an order rendering a judgment by default against Defendant or granting such other relief, pursuant to Rule 1.380 (b) (2) (A), (B) or (C), that the Court finds is justified by Defendant's failure to respond to Plaintiff's Request for Production.

Alternatively, in the event the Court merely compels Defendant to respond, Plaintiff requests that the Court enter an Order precluding Defendant from raising any objection to Plaintiff's Request for Production Plaintiff requests this Court enter an Order: (1) compelling Defendant to furnish complete responses to all of Plaintiffs Requests for Production within ten (10) days of the signing of the Order, (2) compelling Defendant to withdraw any and all objections and produce responsive documents, (3) awarding Plaintiff its attorney's fees and costs incurred in preparing this Motion and obtaining an Order, (4) awarding Plaintiff costs associated with the inspection of records on November 1 and 2, 2017; and (5) granting such other relief as this Court deems just and proper.

RESPECTFULLY SUBMITTED this 3rd day of November, 2017.

BROAD AND CASSEL

BY: /S/ Leonard M. Collins
LEONARD M. COLLINS,
FBN: #423210
lcollins@broadandcassel.com
sbaxter@broadandcassel.com
215 S. Monroe Street, Suite 400
Tallahassee, FL 32301
(850) 681-6810
*Attorney for Tim Canova*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing has been furnished this 3rd day of November, 2017 by Electronic Mail to: Burnadette Norris Weeks, Burnadette Norris-Weeks P.A., 401 North Avenue of the Arts, Fort Lauderdale, Florida 33311.

/S/Leonard M. Collins
LEONARD M. COLLINS

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULES</u>

In accordance with local rules for the 17th Judicial Circuit, I hereby certify that I have made

a good faith effort to resolve this matter prior to my noticing this motion for hearing. The issues

before the Court may be heard and resolved in five minutes.

/S/Leonard M. Collins
LEONARD M. COLLINS

# EXHIBIT "A"

IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, FLORIDA

TIM CANOVA

        Plaintiff,

                                      CASE NO.: CACE-17-010904
                                      Division: 21

*v.*

BRENDA SNIPES, IN HER OFFICIAL
CAPACITY AS SUPERVISOR OF ELECTIONS,
BROWARD COUNTY, FLORIDA

        Defendant,

---

## **FIRST REQUEST FOR PRODUCTION TO DEFENDANT**

Plaintiff, Tim Canova, by and through its undersigned counsel and pursuant to Florida Rule of Civil Procedure 1.350, files this its *First Request for Production* to Defendant, Brenda Snipes, in her official capacity as Supervisor of Elections, Broward County, Florida and requests that it produce for inspection and potentially for copying the following on August 15, 2017 (30) days from the date of this Request, at the office of the Supervisor of Elections, 1501 NW 40th Avenue, Lauderhill, Florida 33313[1].

## **INSTRUCTIONS AND DEFINITIONS**

The following instructions shall apply to this set of Requests for Production:

1.        If any document is withheld on the grounds that the document is subject to a

---

[1] On information and belief the records sought are stored at the Lauderhill office of the Supervisor of Elections, to the extent that this is not the case, please advise so we may make other arrangements.

claim of privilege or for any other reason: (a) For each such document identify the nature of the document (letter, memorandum, computer tape, e-mail, etc.) and its author, date of production, subject matter; (b) State the reason for withholding the document; (c) Specify the basis for your assertion or claim of privilege; (d) Identify each person who received a copy and/or has in its possession, custody, or control a copy of the document. The Defendant hereby invokes the requirements of Rule 1.280(b)(6), Fla. R. Civ. P. for preparation of a privilege log and does not consent to any waiver of such requirement.

2.      In the event you object to any request herein on the basis of a contention that the request is overly broad for any reason, respond to that request as narrowed in such a way as to render it not overly broad in your opinion, and then state the extent and basis for which you have narrowed that request for purposes of your response.

3.      If any portion of a document is responsive, then all pages of the document and all materials attached and/or appended to the document shall be produced.

4.      These requests for production of documents are continuing in nature, and to the extent you obtain any additional responsive documents between the time you respond to these requests and the time of trial, you are required to promptly produce any such documents.

5.      If there is any document or other tangible item described by this request which is no longer in your possession, custody or control, or is no longer in existence or accessible to you, please indicate:

a. The date and nature of the disposition of such document or other tangible item, including, but no limited to, whether such: (a) is missing or lost, (b) has

been destroyed, or (c) has been transferred to another person;

    b.  The circumstances surrounding such disposition, including any authorization therefore; and

    c.  Where applicable, any other person or entity that currently is in possession, custody or control of such document or item.

6.    Plaintiff seeks to inspect and potentially copy or scan (pursuant to Florida Rule of Civil Procedure 1.350 (a)(2) the documents sought herein.

7.    Plaintiff seeks the documents to be produced as they are stored in the ordinary course and scope of business.

8.    Plaintiff understands that certain documents, specifically cast ballots must be handled by staff of the Supervisor of Elections, pursuant to Florida Statute 119.07(5). Plaintiff will not touch any original ballots, although Plaintiff seeks to visually inspect ballots and may instruct supervisor's staff to make photocopies of ballots at its request.

9.    The term "documents" or "documentation" means any medium upon which intelligence or information can be recorded or retrieved, and includes, without limitation, the original and each copy, regardless of origin and location, or any computer disk, book, pamphlet, periodical, letter, or memorandum (including any memorandum or report of a meeting or conversation), statute, invoice, bill, order, form, receipt, financial statement, accounting entry, timesheet, diary, calendar, telex, telegram, cable, report, record, contract, agreement, study, handwritten note, draft, working paper, chart, paper, print, laboratory record, drawing, sketch, graph, index, list, tape, photograph, microfilm, data sheet or data processing card, specification, or any other written, recorded, transcribed, punched tape,

filmed, or graphic matter, however produced or reproduced, which is in your possession, custody, control, or otherwise accessible to you, or which was, but is no longer, in your possession, custody or control.

　　　　10.　　The term "communication" means every manner or type of disclosure, transfer, documentation or exchange of information, whether written or oral, whether in person, by telephone, e-mail, text, mail, personal delivery or otherwise.

　　　　11.　　The term "pertaining to" means regarding, referring to, relating to, mentioning, evidencing, or addressing, whether in whole or in part.

## REQUESTS FOR PRODUCTION

1.　　All ballots cast (including early voting, election day voting, mail-in voting, handicapped voting, provisional or affidavit ballots, military or overseas ballots, void ballots, blank ballots, write-in ballots and any other form of ballot not mentioned) during the August 30, 2016 primary election for Broward County precincts of Florida's 23rd congressional district.

2.　　The digital files of the signature of each voter that voted during the August 30, 2016 primary election for Broward County precincts of Florida's 23rd congressional district. Plaintiff does not seek copies of this material, simply the ability to inspect the records in the possession of the Supervisor of Elections.

3.　　Chain of custody documentation for ballots cast in the August 30, 2016 primary election in Broward County precincts of Florida's 23r$^d$ congressional district.

4.　　Any and all seals showing that the ballots Florida's 23r$^d$ congressional district were secure at all times following their being cast or received up until the time of the Public Records Request scanning.

5.　　Written policies and procedures describing the chain of custody protocols of the Broward County Supervisor of Elections Office.

6.　　Written proof of compliance with policies and procedures describing the chain of custody protocols of the Broward County Supervisor of Elections Office.

7.　　Digital record of all ballots printed for the August 30th Primary and separate item since the August 30th Primary.

8.   All communications concerning the ordering, destruction, recycling or shredding of the ballots from the August 30, 2016 primary.

9.   Ballot Image Files generated by all scanners used by Broward County to count the vote from the August 30, 2016 Primary Election.

10.  The Cast Vote Record (CVR) for the vote from the August 30, 2016 Primary Election.

11.  All communications with VR Systems, from August 15 — September 15, 2016

12.  All communication with the email address vr.elections@gmail.com from August 15, 2016 — to the present.

RESPECTFULLY SUBMITTED this 14 day of July, 2017.

BROAD AND CASSEL

BY: /S/ Leonard M. Collins
LEONARD M. COLLINS,
FBN: #423210
lcollins@broadandcassel.com
sbaxter@broadandcassel. corn
215 S. Monroe Street, Suite 400
Tallahassee, FL 32301
(850) 681-6810
*Attorney for Tim Canova*

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing has been furnished this 14th day of July, 2017 by Electronic Mail to: Burnadette Norris Weeks, Burnadette Norris-Weeks P.A., 401 North Avenue of the Arts, Fort Lauderdale, Florida 33311.

/S/Leonard M. Collins
LEONARD M. COLLINS,

# EXHIBIT "B"

**Susan Huss**

| | |
|---|---|
| **From:** | Leonard Collins |
| **Sent:** | Monday, October 23, 2017 4:46 PM |
| **To:** | bnorris@bnwlegal.com |
| **Cc:** | maustin@apnwlaw.com; 'Dr. Brenda C. Snipes'; 'Mary Hall'; 'Dolly Gibson' |
| **Subject:** | RE: Canova v. Snipes |

Ms. Weeks,

On multiple occasions, I have asked you for a copy of the email sent that indicated that November 1 was an acceptable date. Also, I want a copy of the costs provided to us. Please provide it to me. After waiting for more than a week I reached out to you on dates and you responded with question marks. Even though, you now seem to admit that there was never an email concerning costs.

What has changed on costs? Can you put it in writing? The cloak and dagger gamesmanship that is being engaged in here violates public records laws. As I have stated in emails to you this month and in my May 9, 2017 letter, we need two days to review records and copy the records--- you seem to be only providing one day.

My client, for months, has been denied the ability to copy and inspect the records per my May 9, 2017 letter. Your office continues to act in bad faith and we need the court to address this issue.

Please provide me with a full response to my client's public records request, as stated in my May 9, 2017 correspondence or please provide me with dates of your availability for hearing so that this issue can be resolved.

Thank you,

Leonard Collins

**From:** bnorris@bnwlegal.com [mailto:bnorris@bnwlegal.com]
**Sent:** Monday, October 23, 2017 4:40 PM
**To:** Leonard Collins <lcollins@broadandcassel.com>
**Cc:** maustin@apnwlaw.com; 'Dr. Brenda C. Snipes' <bsnipes@browardsoe.org>; 'Mary Hall' <mhall@browardsoe.org>; 'Dolly Gibson' <dgibson@browardsoe.org>
**Subject:** RE: Canova v. Snipes

Not sure what you are referring to. I've written you back and we spoke following the hearing. On the cost matter, things have changed and and I want to have a discussion to see which direction you would like to go in. Can we arrange a call with you, me and SOE staff? It will not take long.

Burnadette Norris-Weeks

**From:** Leonard Collins [mailto:lcollins@broadandcassel.com]
**Sent:** Monday, October 23, 2017 4:01 PM
**To:** bnorris@bnwlegal.com
**Cc:** maustin@apnwlaw.com; 'Dr. Brenda C. Snipes' <bsnipes@browardsoe.org>; 'Mary Hall' <mhall@browardsoe.org>; 'Dolly Gibson' <dgibson@browardsoe.org>
**Subject:** RE: Canova v. Snipes

1

Following up, I am asking for the materials required to respond to a public records request or for a hearing on this issue. We want to know when we will have access to inspect and copy the records and want to know what that would cost. I don't understand why your office has failed to provide this information on a request made in March.

Additionally, Ms. Weeks claims that she sent me an email that I have never received. I am asking for a copy of that email--not an unreasonable request.

We are asking for a written response to our public records request, so that we may copy or inspect the records as delineated in my May 9, 2017 correspondence or dates to address this matter with the Court on our Motion to Compel.

Thank you for your attention to this matter.

Leonard Collins

**From:** Leonard Collins
**Sent:** Monday, October 23, 2017 1:32 PM
**To:** 'bnorris@bnwlegal.com' <bnorris@bnwlegal.com>
**Cc:** maustin@apnwlaw.com; 'Dr. Brenda C. Snipes' <bsnipes@browardsoe.org>; 'Mary Hall' <mhall@browardsoe.org>; 'Dolly Gibson' <dgibson@browardsoe.org>
**Subject:** RE: Canova v. Snipes

Ms. Weeks,

I just got back to the office, I was out to lunch.

I am sorry, but this email is not responsive to my prior request. Please produce the email where you previously offered November 1 as a date to inspect and copy ballots. Also, please provide me with the fees and costs sought with the inspection and duplication of the ballots that you claim to have provided.

Thank you,

Leonard Collins

**From:** bnorris@bnwlegal.com [mailto:bnorris@bnwlegal.com]
**Sent:** Monday, October 23, 2017 1:11 PM
**To:** Leonard Collins <lcollins@broadandcassel.com>
**Cc:** maustin@apnwlaw.com; 'Dr. Brenda C. Snipes' <bsnipes@browardsoe.org>; 'Mary Hall' <mhall@browardsoe.org>; 'Dolly Gibson' <dgibson@browardsoe.org>
**Subject:** RE: Canova v. Snipes

Dear Mr. Collins,

I just called your office to arrange a telephone conference call to discuss an inspection of ballot images on November 1st . This call was made consistent with the e-mail below. Initially, the receptionist said that you were available but later came back to the telephone and said that you were not.

Please confirm whether November 1st still works as a date for inspection? As I told your assistant at the time of my call, Dr. Snipes and other senior SOE staff were on the telephone with me. The Broward SOE has identified and secured new technology that will make viewing easier. We would like to discuss it with you.

Please call me at your earliest convenience.

Sincerely,

Burnadette Norris-Weeks

**From:** bnorris@bnwlegal.com [mailto:bnorris@bnwlegal.com]
**Sent:** Friday, October 13, 2017 5:05 AM
**To:** 'Leonard Collins' <lcollins@broadandcassel.com>
**Cc:** maustin@apnwlaw.com
**Subject:** RE: Canova v. Snipes 17-010904 (21)

Mr. Collins,

I will review but we will still need to have a conversation with SOE staff so that we are all on the same page.  Also, this email confirms our earlier conversation and email wherein we discussed that you will not be permitted to videotape.  Please respond as to whether we are on the same page with respect to videotaping issue.

We do not want to waste time or be surprised.

Burnadette

**From:** Leonard Collins [mailto:lcollins@broadandcassel.com]
**Sent:** Thursday, October 12, 2017 11:28 PM
**To:** bnorris@bnwlegal.com
**Cc:** maustin@apnwlaw.com
**Subject:** Re: Canova v. Snipes 17-010904 (21)

Your May 23rd email detailed costs and a deposit. Please review that and let me know if anything has changed.

Thank you,

Leonard Collins

On Oct 12, 2017, at 11:10 PM, "bnorris@bnwlegal.com" <bnorris@bnwlegal.com> wrote:

> Mr. Collins,
>
> I read your other email first.  When would you like to discuss the deposit and logistics?
>
> I will reach out to the SOE's office on these three dates.  If none work, I will forward a date within one of the weeks suggested.  Thanks.
>
> Burnadette Norris-Weeks
>
> **From:** Leonard Collins [mailto:lcollins@broadandcassel.com]
> **Sent:** Thursday, October 12, 2017 11:12 AM
> **To:** bnorris@bnwlegal.com
> **Cc:** maustin@apnwlaw.com
> **Subject:** RE: Canova v. Snipes 17-010904 (21)

I am not sure I understand, we already provided you with full weeks, October 30, November 6th & November 13th.

But if you would like specific days instead: October 30, 31 and November 1.

Thank you,

<image001.jpg>
www.broadandcassel.com
<image002.jpg>      <image003.jpg>      <image004.jpg>

**LEONARD COLLINS**
Of Counsel

**Broad and Cassel LLP**
215 South Monroe Street, Suite 400
Tallahassee, FL  32301
**Tel:** 850.681.6810
**Fax:** 850.521.1449
**Direct Line:** 850.205.3350
lcollins@broadandcassel.com

**From:** bnorris@bnwlegal.com [mailto:bnorris@bnwlegal.com]
**Sent:** Thursday, October 12, 2017 11:03 AM
**To:** Leonard Collins <lcollins@broadandcassel.com>
**Cc:** maustin@apnwlaw.com
**Subject:** FW: Canova v. Snipes 17-010904 (21)

Mr. Collins -- I am resending this email requesting 3 specific dates for the inspection.  Thank you.

Burnadette Norris-Weeks

**From:** bnorris@bnwlegal.com [mailto:bnorris@bnwlegal.com]
**Sent:** Tuesday, October 10, 2017 8:15 PM
**To:** lcollins@broadandcassel.com
**Subject:** FW: Canova v. Snipes 17-010904 (21)

Dear Mr. Collins --

Please find attached the Court ruling issued today.

Consistent with the conversation that we had with the Court on October 3, 2017, I am reaching out to determine whether you have three dates that you would like to share for a possible inspection of ballots -- and any other available public records.  As we discussed, I disagree to any videotaping as it may place my client in a position of being sued for improper disclosure of confidential information (even if inadvertent).  I look forward to hearing back from you.

As we have already shared with you, we do not need a Court Order to allow a review of public records.  The office discloses public records on a daily basis.  We look forward to hearing from you soon.  Also, we need to discuss the items in your letter so that I can verify the cost of records with the SOE's office.

Sincerely,

Burnadette Norris-Weeks
General Counsel, Broward County Supervisor of Elections

**From:** Division 21 [mailto:div21@17th.flcourts.org]
**Sent:** Tuesday, October 10, 2017 5:18 PM
**To:** lcollins@broadandcassel.com; Bnorris@bnwlegal.com
**Subject:** Canova v. Snipes 17-010904 (21)

Hello,

Please see attached.

Thank you.


--
Jennifer Castaneda-Sheehan
Judicial Assistant to Judge Raag Singhal
(954) 831-7704

THE INFORMATION CONTAINED IN THIS TRANSMISSION IS ATTORNEY PRIVILEGED AND CONFIDENTIAL. IT IS INTENDED FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE. ANY ATTACHMENTS TO THIS TRANSMISSION ARE FOR THE SOLE PURPOSE OF CONVEYING THE DIRECT WRITTEN AND COMMONLY VISIBLE COMMUNICATION CONTAINED THEREIN. NO TRANSMISSION OF UNDERLYING CODE OR METADATA IS INTENDED. USE OF ANY ATTACHMENT FOR ANY PURPOSE OTHER THAN RECEIPT OF THE DIRECT WRITTEN COMMUNICATION CONTAINED THEREIN IS STRICTLY PROHIBITED. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPY OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE IMMEDIATELY NOTIFY AND RETURN THE ORIGINAL MESSAGE TO THE SENDER. THANK YOU.

THE INFORMATION CONTAINED IN THIS TRANSMISSION IS ATTORNEY PRIVILEGED AND CONFIDENTIAL. IT IS INTENDED FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE. ANY ATTACHMENTS TO THIS TRANSMISSION ARE FOR THE SOLE PURPOSE OF CONVEYING THE DIRECT WRITTEN AND COMMONLY VISIBLE COMMUNICATION CONTAINED THEREIN. NO TRANSMISSION OF UNDERLYING CODE OR METADATA IS INTENDED. USE OF ANY ATTACHMENT FOR ANY PURPOSE OTHER THAN RECEIPT OF THE DIRECT WRITTEN COMMUNICATION CONTAINED THEREIN IS STRICTLY PROHIBITED. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPY OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE IMMEDIATELY NOTIFY AND RETURN THE ORIGINAL MESSAGE TO THE SENDER. THANK YOU.

THE INFORMATION CONTAINED IN THIS TRANSMISSION IS ATTORNEY PRIVILEGED AND CONFIDENTIAL. IT IS INTENDED FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE. ANY ATTACHMENTS TO THIS TRANSMISSION ARE FOR THE SOLE PURPOSE OF CONVEYING THE DIRECT WRITTEN AND COMMONLY VISIBLE COMMUNICATION CONTAINED THEREIN. NO TRANSMISSION OF UNDERLYING CODE OR METADATA IS INTENDED. USE OF ANY ATTACHMENT FOR ANY PURPOSE OTHER THAN RECEIPT OF THE DIRECT WRITTEN COMMUNICATION CONTAINED THEREIN IS STRICTLY PROHIBITED. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPY OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE IMMEDIATELY NOTIFY AND RETURN THE ORIGINAL MESSAGE TO THE SENDER. THANK YOU.

# EXHIBIT "C"

## Susan Huss

| | |
|---|---|
| **From:** | Leonard Collins |
| **Sent:** | Friday, November 3, 2017 4:53 PM |
| **To:** | Susan Huss |
| **Subject:** | Fwd: Canova v. Snipes |

Begin forwarded message:

> **From:** Leonard Collins <lcollins@broadandcassel.com>
> **Date:** October 27, 2017 at 2:50:21 PM EDT
> **To:** "bnorris@bnwlegal.com" <bnorris@bnwlegal.com>
> **Cc:** "maustin@apnwlaw.com" <maustin@apnwlaw.com>
> **Subject: RE: Canova v. Snipes**

We have provided you with payment and you have confirmed receipt of the same. My client has also purchased the airplane ticket of his agent to inspect and copy the ballots, based on your representation that the records would be made available on November 1 and 2. I accepted this date on my clients' behalf and never rejected the date, despite the lack of information provided concerning the process. Our representatives are going to be at the Supervisor's office at 9 am on November 1. To the extent that the Supervisor chooses to deny them access to public records (without any legal merit or defense), she does so at her peril.

In terms of video-taping, we disagree. You have made a host of false representations on the record concerning video-taping. We proposed that a court reporter would video tape the meeting where the ballots were inspected, that the Court reporter would be in a position where the video would not have up-close images of ballots. We have no intention of having any images of any ballots that can be read on camera, but we do want to show the inspection and copying process and the overall state of the records. You suggested that random people would be running amok with video cameras during the inspection, that is simply made up. Nevertheless, we agreed to proceed with obtaining the records, while reserving the video tape issue for the court to decide at a later date, which is our right.

You absolutely yelled at me, you cut me off and did not allow me to speak. It is unbelievably unprofessional to be addressed like that by an opposing counsel. My assistant was in my office and overheard the telephone call, Ms. Snipes did as well.

There is no reason to push off the inspection and duplicating of the public records November 1 and 2.

Thank you,

# BROAD CASSEL

www.broadandcassel.com

f 𝕏 in

**LEONARD COLLINS**
Of Counsel

**Broad and Cassel LLP**
215 South Monroe Street, Suite 400
Tallahassee, FL 32301
Tel: 850.681.6810
Fax: 850.521.1449
Direct Line: 850.205.3350
lcollins@broadandcassel.com

**From:** bnorris@bnwlegal.com [mailto:bnorris@bnwlegal.com]
**Sent:** Friday, October 27, 2017 1:27 PM
**To:** Leonard Collins <lcollins@broadandcassel.com>
**Cc:** maustin@apnwlaw.com
**Subject:** RE: Canova v. Snipes

Mr. Collins,

I disagree with your mischaracterization of my conversation with you as "yelling." You are either intentionally misrepresenting so that you can attach this document to a motion, or the volume on your telephone was up unusually high.

I did invite you to send payment before you said that our efforts to accommodate an inspection were unreasonable and asked me for hearing dates. At no time do I expect to receive anything at all from your client. I still believe that the best way to deal with discover matters is through the Court. You have been intentionally misleading from the beginning of this matter and I believe that further interaction, without involvement and direction from the Court, will be unproductive. This lawsuit is about the inspection and public records and our answer is not even due yet. We were trying our best to accommodate, but it does not appear that you will allow this case to be resolved under any circumstances.

Further, we still have not addressed the videotape matter and we do not agree to videotaping -- for the reasons previously mentioned. I do not trust you and I do not want to have further interaction with you without involvement of the Court. I previously asked you not to write me and you asked me not to call you so, of course, why would any reasonable person assume that we would be going forward with an inspection that you said we "unreasonable" for unknown reasons. Let's just plan to have the Court resolve all issues on November 6th. It's only a few days later and will allow us to avoid further confusion and what I consider bad faith on your part. There is no pleasing you. As I said before you set your hearing, there is no reason to write me further.

Burnadette Norris-Weeks

**From:** Leonard Collins [mailto:lcollins@broadandcassel.com]
**Sent:** Friday, October 27, 2017 12:54 PM
**To:** bnorris@bnwlegal.com
**Subject:** RE: Canova v. Snipes

Dear Ms. Weeks,

You are being disingenuous and are continuing to violate Florida public records laws.

I asked you where the funds for the inspection should be sent and you replied that it should be sent to your office. Because Mr. Canova and I are in different places, he sent you the check for the inspection via fedex. Mr. Canova did nothing but send the funds you requested for the inspection and copying of the ballots.

These records are public records, Mr. Canova should be entitled to inspect and copy those records. You called me earlier today and yelled at me over the telephone that my client could either have the records or the hearing, but that he couldn't get both. You also yelled that my client people coming from out of town were, "coming at their own risk."

It is apparent that you are now denying my clients the ability to inspect and copy ballots on November 1 and 2. We have made plans to be there, we have people coming from out of town, they are going to be at the Supervisor's office on November 1 and 2--- we have paid for the records and you offered these dates. We will address this entire issue before the Court on the 6th.

I am absolutely dissatisfied by your unprofessional behavior and your office's inability to act in good faith.

To the extent that you do not provide access to the records, after my client has incurred costs associated with obtaining the ballots and we will seek those costs from the Supervisor as part of this lawsuit.

Govern yourself accordingly.

# BROAD

# CASSEL

www.broadandcassel.com

f  y  in

**LEONARD COLLINS**
Of Counsel

**Broad and Cassel LLP**
215 South Monroe Street, Suite 400
Tallahassee, FL 32301
Tel: 850.681.6810
Fax: 850.521.1449
Direct Line: 850.205.3350
lcollins@broadandcassel.com

**From:** bnorris@bnwlegal.com [mailto:bnorris@bnwlegal.com]
**Sent:** Friday, October 27, 2017 12:24 PM
**To:** Leonard Collins <lcollins@broadandcassel.com>
**Cc:** maustin@apnwlaw.com
**Subject:** RE: Canova v. Snipes

Dear Mr. Collins,

As you know, we were prepared to go forward with an inspection of the ballots (and copying of documents to be requested from the still unknown precincts) on November 1st and 2nd. Based on your email below, it appears that you are no longer going forward with the inspection and that you are now

setting a hearing for November 6, 2017 @ 8:45 AM.   You wrote below that my response in trying to organize an inspection was "unacceptable." While I do not know what is "unacceptable", I provided you with possible hearing dates as requested and you set a hearing on the inspection and other matters.

Earlier today, I received a letter from Mr. Canova and check for the records inspection directly from Mr. Canova in the amount of $5,586.00.  I am confused about the check due to the fact that you and Mr. Canova do not appear to be on the same page. Are you still representing by Mr. Canova?  The letter was written directly from Mr. Canova to my attention and it does not mention you or show that you were copied. In case you were aware, please see the attached letter.

I called you today with my client on the telephone and you confirmed that you are still seeking a hearing on November 6ʹ 2017. Due to the confusion, I will see you at the hearing on the 6th. If you are still representing Mr. Canova, please ask him not to contact me directly in the future.  I agree with you that it is necessary to involve the court at this point on all matters of discovery.

Sincerely,

Burnadette Norris-Weeks

**From:** bnorris@bnwlegal.com [mailto:bnorris@bnwlegal.com]
**Sent:** Tuesday, October 24, 2017 11:02 PM
**To:** 'Leonard Collins' <lcollins@broadandcassel.com>
**Cc:** maustin@apnwlaw.com
**Subject:** RE: Canova v. Snipes

I've already provided dates. We have already provided the charge for 2 days of staff time.  It's clear that you are trying to create fees rather than operate in good faith.  Please read all prior email.  Set your hearing.  Nothing else to clarify. Stop writing me. Stop trying to create traps.  We have given you dates and have been trying to work with you in good faith.  I am now available November 2, 6 and 7th for a hearing.  Please set it soon as my calendar fills quickly.  No need to write back, just set the hearing on one of these dates.  Thank you.  Leave us alone.

**From:** Leonard Collins [mailto:lcollins@broadandcassel.com]
**Sent:** Tuesday, October 24, 2017 5:33 PM
**To:** bnorris@bnwlegal.com
**Cc:** maustin@apnwlaw.com
**Subject:** RE: Canova v. Snipes

The record speaks for itself.  I need to know the fee you want to charge us.  This response is unacceptable.  Please provide me with dates for a hearing on my motion to compel.

Thank you,

Leonard Collins

**From:** bnorris@bnwlegal.com [mailto:bnorris@bnwlegal.com]
**Sent:** Tuesday, October 24, 2017 5:22 PM
**To:** Leonard Collins <lcollins@broadandcassel.com>

Cc: maustin@apnwlaw.com
Subject: RE: Canova v. Snipes

I am not going to play your games and I do not agree to your facts.

Bottom line. If you want to inspect ballots, they will be available for you to inspect on November 1st and 2nd. We have made plans for you to review and inspect. A call at this point will not be fruitful. For the copies that you want (since you will not tell us which precincts you actually want copies from) we will print those copies and charge you for them at the time of your visit. The deposit should be provided as soon as possible so that the office can dedicate the staff time for those days. The photocopy amount is single side 15 cents. My comment in court had to do with the scope -- since you've already received certain documents and I was not clear whether you were claiming anything else was outstanding or exactly what the office had provided at that time.

I don't want to unnecessarily run up fees going back and forth with things I've already written ....so, at this point, if you want to have the inspection in November all you need to do is simply send the requested deposit. Again, you don't need to keep going back and forth with me. Hopefully, you will send the check so that we can move forward. My address is 401 NW 7th Avenue, Fort Lauderdale 33311. Thank you for your cooperation in advance.

From: Leonard Collins [mailto:lcollins@broadandcassel.com]
Sent: Tuesday, October 24, 2017 12:19 PM
To: bnorris@bnwlegal.com
Cc: maustin@apnwlaw.com
Subject: RE: Canova v. Snipes

I want to close the loop on this email chain.

First, after not having heard anything from you for more than 10 days, I reached out for information. Your response was that you responded, but not you now admit that you did not respond. Yesterday, unannounced you had a group of staff from the supervisor's office on the phone for me to speak to without my elections expert, Ms. Friesdat, present.

If there is information that is necessary for my client to inspect and copy the materials sought by the Public Records Request, of course that needs to be provided. The way to do that would be for a mutually agreeable time to be provided for a telephone conference.

Second, Mr. Canova will provide a check to your office to cover the costs of the inspection and copying. When we were at the hearing, you indicated that you needed time to determine what the costs would be. I have no idea as to what your office intends to charge per photocopy. What is the amount you are seeking from Mr. Canova to allow this process to proceed?

Please advise.

**From:** bnorris@bnwlegal.com [mailto:bnorris@bnwlegal.com]
**Sent:** Monday, October 23, 2017 9:56 PM
**To:** Leonard Collins <lcollins@broadandcassel.com>
**Cc:** maustin@apnwlaw.com
**Subject:** RE: Canova v. Snipes

What makes zero sense? What don't you understand? I can't talk to you. You will not call me back. You pretend not to understand anything. You consistently play games. I am available November 1, 2, 6 and 7th. Stop writing me. Save your issues for the Court. That's what you want anyway.

**From:** Leonard Collins [mailto:lcollins@broadandcassel.com]
**Sent:** Monday, October 23, 2017 9:19 PM
**To:** Burnadette Norris-Weeks <bnorris@bnwlegal.com>
**Subject:** Re: Canova v. Snipes

This makes zero sense.

I am going to seek a calendar call hearing to resolve this issue. When are you available for a five minute hearing on my motion to compel?

On Oct 23, 2017, at 9:13 PM, Burnadette Norris-Weeks <bnorris@bnwlegal.com> wrote:

> Your email does not make sense. How would we know what you will want copies of in order to give an estimate? We have multiple email from your "alleged" agent saying that she did not want paper at all. I've asked you for specific days for your inspection before today. You did not mention, until today, that you wanted successive days. I keep responding to the same questions from you over and over again. We do not agree to videotaping and your going forward with a court report says to us that you are no longer pursuing any claim regarding videotaping. If you are, you should seek clarification from the Court now as we don't intend to play games with you.
>
> Please remove my client and its representatives from all future email. You no longer have permission to include them in email to me.
>
> Kindly provide the inspection deposit. It appears from this email that you are also refusing a telephone conference to explain the technology related to the inspection.
>
> We will see you on November 1st unless you decide to seek clarification on the videotaping matter. Thank you.
>
> Burnadette Norris-Weeks
>
> Sent from my iPhone

On Oct 23, 2017, at 5:57 PM, Leonard Collins <lcollins@broadandcassel.com> wrote:

Once again, you are making things up and acting in bad faith.

For months your office refused to allow us to copy the ballots.  It is explicitly stated in multiple emails.  This is absolutely bad faith on your part and it continues to this moment.  Your last email on the topic sought fees for staff time but not copies.  Now we are obtaining photocopies, your prior estimate did not provide for that.  Under Chapter 119, we are entitled to a reasonable cost estimate from your office, but you refuse to provide it.  I am assuming that your office will provide the equipment to duplicate the records and that staff will use the equipment to duplicate the records.  What will that cost?  Your office has never provided us with an answer to this question despite our entitlement to the same.

We are not required to provide you with the specific twelve precincts, our request makes explicit that we want to inspect all precincts and will pick twelve, see our prior correspondences.  You agreed to this in prior emails.

Please confirm that we have agreed that a court reporter will transcribe the meeting where the ballots are going to be inspected and copied as opposed to the court reporter videotaping the meeting.

We are going to accept November 1 and November 2 (the email below is the first time this has ever been offered) for inspection and copying.

Leonard Collins


**From:** bnorris@bnwlegal.com [mailto:bnorris@bnwlegal.com]
**Sent:** Monday, October 23, 2017 5:24 PM
**To:** Leonard Collins <lcollins@broadandcassel.com>
**Cc:** maustin@apnwlaw.com; 'Dr. Brenda C. Snipes' <bsnipes@browardsoe.org>; 'Mary Hall' <mhall@browardsoe.org>; 'Dolly Gibson' <dgibson@browardsoe.org>
**Subject:** RE: Canova v. Snipes

We are available on November 1st and 2nd for review of the records and copying.  You have been giving one date in the last several email.  The gamesmanship is on your side alone.  Nobody is denying records.  Your alleged agent acknowledged having everything then you filed a lawsuit only days later.  In bad faith, you have tried to avoid paying for the review and inspection of documents.  You have NEVER provided us with the 12 precincts that you are supposedly seeking.  We were told last year that Lulu would get back with the office on records but she did not do so until earlier this year.  Since then it's been one excuse after the next with your changing requests and even refusing to pick up records that you were told were available.  Even now, we are trying to provide

dates and you are coming up with every excuse possible. I am not the best person to discuss the technology and therefore trying to make SOE tech staff available to you. You are trying everything that you can to avoid gaining more information. Feel free to provide the initial deposit amount to us (in my email sent months ago just before you stopped communicating) has the amount. If there is an additional amount for staff time, we will bill you accordingly.

Again, are you interested in the inspection dates of November 1st and 2nd or not? If not, go ahead and set your hearing but I will not have time to continue writing you when your intentions are clearly not honest.

Burnadette Norris-Weeks

**From:** Leonard Collins [mailto:lcollins@broadandcassel.com]
**Sent:** Monday, October 23, 2017 4:46 PM
**To:** bnorris@bnwlegal.com
**Cc:** maustin@apnwlaw.com; 'Dr. Brenda C. Snipes' <bsnipes@browardsoe.org>; 'Mary Hall' <mhall@browardsoe.org>; 'Dolly Gibson' <dgibson@browardsoe.org>
**Subject:** RE: Canova v. Snipes

Ms. Weeks,

On multiple occasions, I have asked you for a copy of the email sent that indicated that November 1 was an acceptable date. Also, I want a copy of the costs provided to us. Please provide it to me. After waiting for more than a week I reached out to you on dates and you responded with question marks. Even though, you now seem to admit that there was never an email concerning costs.

What has changed on costs? Can you put it in writing? The cloak and dagger gamesmanship that is being engaged in here violates public records laws. As I have stated in emails to you this month and in my May 9, 2017 letter, we need two days to review records and copy the records--- you seem to be only providing one day.

My client, for months, has been denied the ability to copy and inspect the records per my May 9, 2017 letter. Your office continues to act in bad faith and we need the court to address this issue.

Please provide me with a full response to my client's public records request, as stated in my May 9, 2017 correspondence or please provide me with dates of your availability for hearing so that this issue can be resolved.

Thank you,

Leonard Collins

**From:** bnorris@bnwlegal.com [mailto:bnorris@bnwlegal.com]
**Sent:** Monday, October 23, 2017 4:40 PM
**To:** Leonard Collins <lcollins@broadandcassel.com>
**Cc:** maustin@apnwlaw.com; 'Dr. Brenda C. Snipes'
<bsnipes@browardsoe.org>; 'Mary Hall' <mhall@browardsoe.org>;
'Dolly Gibson' <dgibson@browardsoe.org>
**Subject:** RE: Canova v. Snipes

Not sure what you are referring to. I've written you back and we spoke
following the hearing. On the cost matter, things have changed and and
I want to have a discussion to see which direction you would like to go
in. Can we arrange a call with you, me and SOE staff? It will not take
long.

Burnadette Norris-Weeks

**From:** Leonard Collins [mailto:lcollins@broadandcassel.com]
**Sent:** Monday, October 23, 2017 4:01 PM
**To:** bnorris@bnwlegal.com
**Cc:** maustin@apnwlaw.com; 'Dr. Brenda C. Snipes'
<bsnipes@browardsoe.org>; 'Mary Hall' <mhall@browardsoe.org>;
'Dolly Gibson' <dgibson@browardsoe.org>
**Subject:** RE: Canova v. Snipes

Following up, I am asking for the materials required to respond to a
public records request or for a hearing on this issue. We want to know
when we will have access to inspect and copy the records and want to
know what that would cost. I don't understand why your office has
failed to provide this information on a request made in March.

Additionally, Ms. Weeks claims that she sent me an email that I have
never received. I am asking for a copy of that email--not an
unreasonable request.

We are asking for a written response to our public records request, so
that we may copy or inspect the records as delineated in my May 9,
2017 correspondence or dates to address this matter with the Court on
our Motion to Compel.

Thank you for your attention to this matter.

Leonard Collins

**From:** Leonard Collins
**Sent:** Monday, October 23, 2017 1:32 PM
**To:** 'bnorris@bnwlegal.com' <bnorris@bnwlegal.com>
**Cc:** maustin@apnwlaw.com; 'Dr. Brenda C. Snipes'
<bsnipes@browardsoe.org>; 'Mary Hall' <mhall@browardsoe.org>;
'Dolly Gibson' <dgibson@browardsoe.org>
**Subject:** RE: Canova v. Snipes

9

Ms. Weeks,

I just got back to the office, I was out to lunch.

I am sorry, but this email is not responsive to my prior request. Please produce the email where you previously offered November 1 as a date to inspect and copy ballots. Also, please provide me with the fees and costs sought with the inspection and duplication of the ballots that you claim to have provided.

Thank you,

Leonard Collins

**From:** bnorris@bnwlegal.com [mailto:bnorris@bnwlegal.com]
**Sent:** Monday, October 23, 2017 1:11 PM
**To:** Leonard Collins <lcollins@broadandcassel.com>
**Cc:** maustin@apnwlaw.com; 'Dr. Brenda C. Snipes' <bsnipes@browardsoe.org>; 'Mary Hall' <mhall@browardsoe.org>; 'Dolly Gibson' <dgibson@browardsoe.org>
**Subject:** RE: Canova v. Snipes

Dear Mr. Collins,

I just called your office to arrange a telephone conference call to discuss an inspection of ballot images on November 1st. This call was made consistent with the e-mail below. Initially, the receptionist said that you were available but later came back to the telephone and said that you were not.

Please confirm whether November 1st still works as a date for inspection? As I told your assistant at the time of my call, Dr. Snipes and other senior SOE staff were on the telephone with me. The Broward SOE has identified and secured new technology that will make viewing easier. We would like to discuss it with you.

Please call me at your earliest convenience.

Sincerely,

Burnadette Norris-Weeks

**From:** bnorris@bnwlegal.com [mailto:bnorris@bnwlegal.com]
**Sent:** Friday, October 13, 2017 5:05 AM
**To:** 'Leonard Collins' <lcollins@broadandcassel.com>
**Cc:** maustin@apnwlaw.com
**Subject:** RE: Canova v. Snipes 17-010904 (21)

Mr. Collins,

I will review but we will still need to have a conversation with SOE staff so that we are all on the same page. Also, this email confirms our

earlier conversation and email wherein we discussed that you will not be permitted to videotape.  Please respond as to whether we are on the same page with respect to videotaping issue.

We do not want to waste time or be surprised.

Burnadette

**From:** Leonard Collins [mailto:lcollins@broadandcassel.com]
**Sent:** Thursday, October 12, 2017 11:28 PM
**To:** bnorris@bnwlegal.com
**Cc:** maustin@apnwlaw.com
**Subject:** Re: Canova v. Snipes 17-010904 (21)

Your May 23rd email detailed costs and a deposit. Please review that and let me know if anything has changed.

Thank you,

Leonard Collins


On Oct 12, 2017, at 11:10 PM, "bnorris@bnwlegal.com" <bnorris@bnwlegal.com> wrote:

> Mr. Collins,
>
> I read your other email first.  When would you like to discuss the deposit and logistics?
>
> I will reach out to the SOE's office on these three dates.  If none work, I will forward a date within one of the weeks suggested.  Thanks.
>
> Burnadette Norris-Weeks
>
> **From:** Leonard Collins [mailto:lcollins@broadandcassel.com]
> **Sent:** Thursday, October 12, 2017 11:12 AM
> **To:** bnorris@bnwlegal.com
> **Cc:** maustin@apnwlaw.com
> **Subject:** RE: Canova v. Snipes 17-010904 (21)
>
> I am not sure I understand, we already provided you with full weeks,  October 30,  November 6th & November 13th.
>
> But if you would like specific days instead: October 30, 31 and November 1.
>
> Thank you,

&lt;image001.jpg&gt;
www.broadandcassel com
&lt;image002.jpg&gt;     &lt;image003.jpg&gt;     &lt;image004.jpg&gt;

**LEONARD COLLINS**
Of Counsel

**Broad and Cassel LLP**
215 South Monroe Street, Suite 4
Tallahassee, FL 32301
**Tel:** 850.681.6810
**Fax:** 850.521.1449
**Direct Line:** 850.205.3350
lcollins@broadandcassel.com

**From:** bnorris@bnwlegal.com
[mailto:bnorris@bnwlegal.com]
**Sent:** Thursday, October 12, 2017 11:03 AM
**To:** Leonard Collins &lt;lcollins@broadandcassel.com&gt;
**Cc:** maustin@apnwlaw.com
**Subject:** FW: Canova v. Snipes 17-010904 (21)

Mr. Collins — I am resending this email requesting 3
specific dates for the inspection.  Thank you.

Burnadette Norris-Weeks

**From:** bnorris@bnwlegal.com
[mailto:bnorris@bnwlegal.com]
**Sent:** Tuesday, October 10, 2017 8:15 PM
**To:** lcollins@broadandcassel.com
**Subject:** FW: Canova v. Snipes 17-010904 (21)

Dear Mr. Collins —

Please find attached the Court ruling issued today.

Consistent with the conversation that we had with the
Court on October 3, 2017, I am reaching out to
determine whether you have three dates that you
would like to share for a possible inspection of ballots --
and any other available public records.  As we
discussed, I disagree to any videotaping as it may place
my client in a position of being sued for improper
disclosure of confidential information (even if
inadvertent).  I look forward to hearing back from you.

As we have already shared with you, we do not need a
Court Order to allow a review of public records.  The
office discloses public records on a daily basis.  We look
forward to hearing from you soon.  Also,  we need to

discuss the items in your letter so that I can verify the cost of records with the SOE's office.

Sincerely,

Burnadette Norris-Weeks
General Counsel, Broward County Supervisor of Elections

**From:** Division 21 [mailto:div21@17th.flcourts.org]
**Sent:** Tuesday, October 10, 2017 5:18 PM
**To:** lcollins@broadandcassel.com; Bnorris@bnwlegal.com
**Subject:** Canova v. Snipes 17-010904 (21)

Hello,

Please see attached.

Thank you.

--
Jennifer Castaneda-Sheehan
Judicial Assistant to Judge Raag Singhal
(954) 831-7704

THE INFORMATION CONTAINED IN THIS TRANSMISSION IS ATTORNEY PRIVILEGED AND CONFIDENTIAL. IT IS INTENDED FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE. ANY ATTACHMENTS TO THIS TRANSMISSION ARE FOR THE SOLE PURPOSE OF CONVEYING THE DIRECT WRITTEN AND COMMONLY VISIBLE COMMUNICATION CONTAINED THEREIN. NO TRANSMISSION OF UNDERLYING CODE OR METADATA IS INTENDED. USE OF ANY ATTACHMENT FOR ANY PURPOSE OTHER THAN RECEIPT OF THE DIRECT WRITTEN COMMUNICATION CONTAINED THEREIN IS STRICTLY PROHIBITED. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPY OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE IMMEDIATELY NOTIFY AND RETURN THE ORIGINAL MESSAGE TO THE SENDER. THANK YOU.

THE INFORMATION CONTAINED IN THIS TRANSMISSION IS ATTORNEY PRIVILEGED AND CONFIDENTIAL. IT IS INTENDED FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE. ANY ATTACHMENTS TO THIS TRANSMISSION ARE FOR THE SOLE PURPOSE OF CONVEYING THE DIRECT WRITTEN AND COMMONLY VISIBLE COMMUNICATION CONTAINED THEREIN. NO TRANSMISSION OF UNDERLYING CODE OR METADATA IS INTENDED. USE OF ANY ATTACHMENT FOR ANY PURPOSE OTHER THAN RECEIPT OF THE DIRECT WRITTEN COMMUNICATION CONTAINED THEREIN IS STRICTLY PROHIBITED. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPY OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE IMMEDIATELY NOTIFY AND RETURN THE ORIGINAL MESSAGE TO THE SENDER. THANK YOU.

THE INFORMATION CONTAINED IN THIS TRANSMISSION IS ATTORNEY PRIVILEGED AND CONFIDENTIAL. IT IS INTENDED FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE. ANY ATTACHMENTS TO THIS TRANSMISSION ARE FOR THE SOLE PURPOSE OF CONVEYING THE DIRECT WRITTEN AND COMMONLY VISIBLE COMMUNICATION CONTAINED THEREIN. NO TRANSMISSION OF UNDERLYING CODE

OR METADATA IS INTENDED. USE OF ANY ATTACHMENT FOR ANY PURPOSE OTHER THAN RECEIPT OF THE DIRECT WRITTEN COMMUNICATION CONTAINED THEREIN IS STRICTLY PROHIBITED. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPY OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE IMMEDIATELY NOTIFY AND RETURN THE ORIGINAL MESSAGE TO THE SENDER. THANK YOU.

THE INFORMATION CONTAINED IN THIS TRANSMISSION IS ATTORNEY PRIVILEGED AND CONFIDENTIAL. IT IS INTENDED FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE. ANY ATTACHMENTS TO THIS TRANSMISSION ARE FOR THE SOLE PURPOSE OF CONVEYING THE DIRECT WRITTEN AND COMMONLY VISIBLE COMMUNICATION CONTAINED THEREIN. NO TRANSMISSION OF UNDERLYING CODE OR METADATA IS INTENDED. USE OF ANY ATTACHMENT FOR ANY PURPOSE OTHER THAN RECEIPT OF THE DIRECT WRITTEN COMMUNICATION CONTAINED THEREIN IS STRICTLY PROHIBITED. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPY OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE IMMEDIATELY NOTIFY AND RETURN THE ORIGINAL MESSAGE TO THE SENDER. THANK YOU.

THE INFORMATION CONTAINED IN THIS TRANSMISSION IS ATTORNEY PRIVILEGED AND CONFIDENTIAL. IT IS INTENDED FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE. ANY ATTACHMENTS TO THIS TRANSMISSION ARE FOR THE SOLE PURPOSE OF CONVEYING THE DIRECT WRITTEN AND COMMONLY VISIBLE COMMUNICATION CONTAINED THEREIN. NO TRANSMISSION OF UNDERLYING CODE OR METADATA IS INTENDED. USE OF ANY ATTACHMENT FOR ANY PURPOSE OTHER THAN RECEIPT OF THE DIRECT WRITTEN COMMUNICATION CONTAINED THEREIN IS STRICTLY PROHIBITED. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPY OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE IMMEDIATELY NOTIFY AND RETURN THE ORIGINAL MESSAGE TO THE SENDER. THANK YOU.

THE INFORMATION CONTAINED IN THIS TRANSMISSION IS ATTORNEY PRIVILEGED AND CONFIDENTIAL. IT IS INTENDED FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE. ANY ATTACHMENTS TO THIS TRANSMISSION ARE FOR THE SOLE PURPOSE OF CONVEYING THE DIRECT WRITTEN AND COMMONLY VISIBLE COMMUNICATION CONTAINED THEREIN. NO TRANSMISSION OF UNDERLYING CODE OR METADATA IS INTENDED. USE OF ANY ATTACHMENT FOR ANY PURPOSE OTHER THAN RECEIPT OF THE DIRECT WRITTEN COMMUNICATION CONTAINED THEREIN IS STRICTLY PROHIBITED. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPY OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE IMMEDIATELY NOTIFY AND RETURN THE ORIGINAL MESSAGE TO THE SENDER. THANK YOU.

THE INFORMATION CONTAINED IN THIS TRANSMISSION IS ATTORNEY PRIVILEGED AND CONFIDENTIAL. IT IS INTENDED FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE. ANY ATTACHMENTS TO THIS TRANSMISSION ARE FOR THE SOLE PURPOSE OF CONVEYING THE DIRECT WRITTEN AND COMMONLY VISIBLE COMMUNICATION CONTAINED THEREIN. NO TRANSMISSION OF UNDERLYING CODE OR METADATA IS INTENDED. USE OF ANY ATTACHMENT FOR ANY PURPOSE OTHER THAN RECEIPT OF THE DIRECT WRITTEN COMMUNICATION CONTAINED THEREIN IS STRICTLY PROHIBITED. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPY OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE IMMEDIATELY NOTIFY AND RETURN THE ORIGINAL MESSAGE TO THE SENDER. THANK YOU.

THE INFORMATION CONTAINED IN THIS TRANSMISSION IS ATTORNEY PRIVILEGED AND CONFIDENTIAL. IT IS INTENDED FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE. ANY ATTACHMENTS TO THIS TRANSMISSION ARE FOR THE SOLE PURPOSE OF CONVEYING THE DIRECT WRITTEN AND COMMONLY VISIBLE COMMUNICATION CONTAINED THEREIN. NO TRANSMISSION OF UNDERLYING CODE OR METADATA IS INTENDED. USE OF ANY ATTACHMENT FOR ANY PURPOSE OTHER THAN RECEIPT OF THE DIRECT WRITTEN COMMUNICATION CONTAINED THEREIN IS STRICTLY PROHIBITED. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPY OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE IMMEDIATELY NOTIFY AND RETURN THE ORIGINAL MESSAGE TO THE SENDER. THANK YOU.

THE INFORMATION CONTAINED IN THIS TRANSMISSION IS ATTORNEY PRIVILEGED AND CONFIDENTIAL. IT IS INTENDED FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE. ANY ATTACHMENTS TO THIS TRANSMISSION ARE FOR THE SOLE PURPOSE OF CONVEYING THE DIRECT WRITTEN AND COMMONLY VISIBLE COMMUNICATION CONTAINED THEREIN. NO TRANSMISSION OF UNDERLYING CODE OR METADATA IS INTENDED. USE OF ANY ATTACHMENT FOR ANY PURPOSE OTHER THAN RECEIPT OF THE DIRECT WRITTEN COMMUNICATION CONTAINED THEREIN IS STRICTLY PROHIBITED. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPY OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE IMMEDIATELY NOTIFY AND RETURN THE ORIGINAL MESSAGE TO THE SENDER. THANK YOU.

# EXHIBIT "D"

# CLEAR BALLOT

### Broward County Public Records Request Project w/ ClearAudit
### Scope of Work

Clear Ballot's ClearAudit software has specific functionality to meet the needs of Broward County to sort commingled ballots by contest. Our system can automate manual card sorting process that would be required.  This will minimize manual ballot handling and enhance voted ballot security while also reducing the costs, staffing and time associated with the sorting.

Clear Ballot will provide the following in support of this effort:

- Clear Ballot will provide a term software license expiring on 12/31/17.
- Clear Ballot will provide up to 5 days of onsite support
  - Additional Onsite Support is available at $1,500/day

**Engagement Order and Costs**

This Service Engagement Order is entered into by and between Clear Ballot Group, Inc. ("Clear Ballot") and the undersigned ("Customer") under the Software License and Services Agreement (the "Agreement") between the parties. The terms and conditions set forth in the Agreement shall have the same meaning when used as defined terms in this Software & Services Order. In the event of any conflict between the body of the Agreement and this Service Engagement Order, the body of the Agreement shall prevail.

**Designated Jurisdiction**. Designated Jurisdiction for the Licensed Software shall be: The Broward County Supervisor of Elections

| The Broward County Supervisor of Elections Ballot Cataloging Project using ClearAudit | |
|---|---|
| **Price Schedule** | |
| **Service** | Price |
| Term License (expiring December 31, 2017) | $7,500 |
| Five Days of Onsite Support ($1,500/day) | $7,500 |
| **Total Cost** | **$15,000*** |

* Invoice will be sent upon execution of agreement

10/19/2017

## CLEAR BALLOT

# Statement of Work



Prepared Exclusively for

The Broward County Supervisor of Elections

October 19, 2017

Filing # 66794723 E-Filed 01/19/2018 04:47:20 PM

IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, FLORIDA

TIM CANOVA

               Plaintiff,

**CASE NO.: CACE-17-010904**
**Division: 21**

IMMEDIATE HEARING
REQUESTED PURSUANT TO Fla.
Stat. § 119.11

v.

BRENDA SNIPES, IN HER OFFICIAL
CAPACITY AS SUPERVISOR OF ELECTIONS,
BROWARD COUNTY, FLORIDA

               Defendant,
_____/

## **PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

    Plaintiff, TIM CANOVA, pursuant to Fla.R.Civ.P. 1.510 moves for Summary Judgment

As the remedy for the Chapter 119 violations, Plaintiff requests the only remaining relief, the

award of reasonable costs and fees, pursuant to Section 119.12, Fla. Stat. (2016)[1], in support of

Summary Judgment, and with regard to the requested relief Plaintiff states the following grounds

and substantial matter of law to be argued:

## **SUMMARY OF ARGUMENT**

    This Motion for Summary Judgment seeks final judgment against the Defendant,

Supervisor of Elections, for the (1) illegal and unlawful destruction of original voted paper ballots

from a congressional race; and (2) unlawful refusal for over six months prior to their destruction

---

[1] It should be noted this action is governed by the 2016 version of this statute since the public records request was made before May 23, 2017. In 2017, there was an amendment to this statute, but in the adoption of such amendment there was a specific statement that "this act applies on to public records requests made on or after the effective date of this act." See Section 2, Ch. 2017-21, Florida Session Laws. The public records request at issue are the March 10, 2017 and restated and amended May 9, 2017 written requests.

EXHIBIT
E

to produce, and allow copying/scanning of those public records, pursuant to Article I, Section 24 of the Florida Constitution and Chapter 119, Florida Statutes, (herein collectively the "Public Records Act"). On March 10, 2017, the records were specifically requested and identified as follows:

> Request 1: We seek to examine all of the Broward County ballots of Florida's 23rd Congressional District from the August 30, 2016 Democratic Primary as they are stored. We request that they all be brought to the same location, with as minimal disruption to their current state as possible. We specifically request that the Supervisor of Elections office not re-count or sort them prior to our meeting.

> Request 3: We request 100% of the ballots from the August 30, 2016 Democratic primary in the Broward County portion of Florida's 23rd Congressional District be produced: including early voting, election day voting, mail in voting, disabled voting, provisional or affidavit ballots, military or overseas ballots, void ballots, write-in ballots and any other ballot cast not mentioned.

> (See Affidavit of Tim Canova, dated January 17, 2018, ¶ 8 and Exhibit A to Amended Complaint)

The Defendant, Broward County Supervisor of Elections Dr. Brenda Snipes, violated the law and unlawfully destroyed all ballots cast in the August 30, 2016 primary election (the public records sought by this lawsuit), months after this lawsuit was filed. She violated at least three categories of statutory and legal authority which prohibited such destruction.

First, she did so contrary to direct Federal and State statutory authority that requires her to maintain those original ballots for at least 22 months. She destroyed them after only 12 months. (See 52 U.S.C. § 20701, §§101.545, 119.021, and 257.36(6), Fla. Stat., and Rule 1B-24.003, F.A.C.).

Second, the destruction of such ballots was directly contrary to provisions of Chapter 119, Florida Statutes, which prohibited her from destroying such records while this action was pending. Florida Statute 119.11 unequivocally requires:

(4)   **Upon service of a complaint**, counterclaim, or cross-claim in a civil action brought to enforce the provisions of this chapter, **the custodian of the public record that is the subject matter of such civil action shall not** transfer custody, **alter, destroy,** or otherwise dispose of the public record sought to be inspected and examined, notwithstanding the applicability of an exemption or the assertion that the requested record is not a public record subject to inspection and examination under s. 119.07(1), **until the court directs otherwise.** The person who has custody of such public record may, however, at any time permit inspection of the requested record as provided in s. 119.07(1) and other provisions of law. (Emphasis added).

Further, Florida statute § 119.07(1)(h) provides that destruction of the record can only be pursuant to court order:

(h) Even if an assertion is made by the custodian of public records that a requested record is not a public record subject to public inspection or copying under this subsection, **the requested record shall, nevertheless, not be disposed** of for a period of 30 days after the date on which a written request to inspect or copy the record was served on or otherwise made to the custodian of public records by the person seeking access to the record. **If a civil action is instituted within the 30-day period to enforce the provisions of this section with respect to the requested record, the custodian of public records may not dispose of the record except by order of a court of competent jurisdiction after notice to all affected parties.** (Emphasis added).

Despite the explicit requirements of Florida Statutes § 119.11(4) and § 119.07(1)(h), the ballots were destroyed after the filing of this lawsuit, and no order was sought or obtained from this Court prior to the public records being destroyed. Further, the Supervisor of Elections either in bad faith or through gross malfeasance personally and wrongfully signed a document stating that there was no pending litigation concerning the ballots so as to authorize her staff to perform the destruction.

Third, there are pending Requests for Production and a Motion to Compel filed in this lawsuit requiring production of the original paper ballots, (See the Transcript of the Nov. 6, 2017 hearing). Destroying documents which are the subject matter of litigation, and after the other side has a pending discovery request for such documents, is recognized as one of the most egregious violations that a party can engage in during litigation. Florida case law recognizes an affirmative

duty and responsibility to preserve any items or documents that are the subject of a duly served discovery request in litigation.

The documents attached to this Motion, the pleadings and affidavits filed in the Court file demonstrate that there are no genuine issues of material fact as to Defendants' liability to Plaintiff; and that Plaintiff is therefore entitled to a final summary judgment as a matter of law. In particular, all Plaintiff has to prove to make a *prima facie* case in this litigation is that the records sought are public records. Once Plaintiff has demonstrated that the documents requested for inspection and copying are a public record, he has an absolute right to inspect and copy those ballots. The court provides this relief under section 119.11(2), Florida Statutes which provides:

> (2) Whenever a court orders an agency to open its records for inspection in accordance with this chapter, the agency shall comply with such order within 48 hours, unless otherwise provided by the court issuing such order, or unless the appellate court issues a stay order within such 48-hour period.

There is no argument the Supervisor can make in good faith that original voter ballots are not public records or are exempt from the inspection and copying.[2] See, *Roger v. Hood*, 906, So.2d 1220 (Fla. 1st DCA, 2005)("Nothing could be more obvious than that a ballot becomes a public record once it is voted." Id at 1223)

The other relief that is available in a Public Records Act litigation is to obtain attorney's fees. See, §119.12, Fla. Stat. (2016). To make out a *prima facie* case for attorney's fees -- section 119.12 provides as follows:

> If a civil action is filed against an agency to enforce the provisions of this chapter and if the court determines that such agency unlawfully refused to permit a public

---

[2] Had the original ballots not been destroyed during the pendency of this lawsuit, the legal issues would have focused on what are reasonable manner restrictions by which the ballots could have been copied, i.e. paper copies only, or electronic copies by a scanner, and what rights of inspection does Canova have to observe the copying/scanning process to ensure that there is no alteration or manipulation of the ballots occurring while the copying is being conducted.

4

> record to be inspected or copied, the court shall assess and award, against the agency responsible, the reasonable costs of enforcement including reasonable attorneys' fees.

Thus, there is an additional requirement to obtain attorney's fees. The Plaintiff must show that he was "unlawfully refused" his right to inspect and copy the public record. As demonstrated below, the destruction of original voter ballots as occurred in this action is unlawful on several legal principles. The destruction in violation of the legal requirements is so egregious that Plaintiff has a companion request for sanctions for such destruction. The destruction of the original voter ballots is the most extreme and unequivocal type of refusal. Plaintiff has made his *prima facie* showing that he is entitled to attorney's fees.

Lastly, Plaintiff also demonstrates by this motion, that summary judgment is appropriate as to the affirmative defenses raised by the Supervisor. With the destruction of the originals, the affirmative defenses are no longer legally relevant nor germane to the issue of an attorney's fee award under §119.12. Even if one or more of the affirmative defenses should still be legally sufficient or relevant, Plaintiff, by this motion and the accompanying affidavits has demonstrated that there are no genuine issues of material fact which would effectively bar Plaintiff from the relief under §119.12.

## **LIST OF SUPPORTING AFFIDAVITS and DOCUMENTS**

Pursuant to Rule 1.510, Fla. R. Civ. P., Plaintiff hereby designates the following items as supporting affidavits which support this Motion for Summary Judgment"

1. Verified Amended Complaint, in court file.

2. Affidavit of Tim Canova, dated January 17, 2018, (hereinafter "Canova Aff.")

3. Affidavit of Connie Smekens, dated January 18, 2018, (hereinafter " Smekens Aff.")

4. Motion to Compel Dated August 28, 2017, in court file.

5.   Records Disposition Document, dated September 1, 2017, attached to the Notice of Filing Supporting Affidavits and Documents, dated January 19, 2018.

6.   Transcript of Hearing held on November 6, 2017, attached to the Notice of Filing Supporting Affidavits and Documents, dated January 19, 2018.

7.   Portions of GS3 11, attached to the Notice of Filing Supporting Affidavits and Documents, dated January 19, 2018.

8.   May 23, 2017 email correspondence from Mr. Norris-Weeks, in Court file as "Exhibit F" to the Verified Amended Complaint.

## UNDISPUTED FACTS

1.   The August 30, 2016 election between Tim Canova and Debbie Wasserman Schultz, in Florida's 23rd Congressional District, was a federal election. (Canova Aff. ¶ 2).

2.   A public records request to Defendant for records to be produced pursuant to Chapter 119, Florida Statutes. The requests were numbered 1 through 22. (Please see the March 10, 2017 public records request attached as "Exhibit A" to the Amended Complaint, Canova Aff. ¶ 8).

3.   The Defendant's office opened a public records request upon receiving the March 10, 2017 public records request and assigned it a case number, i.e. Public Records Request #2077. (Exhibit "2" to Canova Aff. And ¶ 9)

4.   Public Records Request #2077 was re-noticed and reasserted on May 9, 2017 (See attached Exhibit B)[3]. The amendment stated:

> We simply seek to observe the scanning process and do not propose to touch any ballots. We stated that to the extent that your office sought a reasonable accommodation, in order to provide for scanning/copying of the public records to advise and that we would work out the issue. Specifically, if your objection is to scanning images as opposed to photocopying them, we would work to resolve the matter and would accept photocopies. Our understanding of your response is simply no--- there are no circumstances where we may obtain copies/scans of ballots cast in the August 30, 2016 primary election.

(Exhibit C to the Amended Complaint, and Canova Aff. ¶ 13)

---

[3] While counsel for the Supervisor of Elections denies that she received on May 9, 2017 the correspondence from Mr. Canova's counsel---the irrefutable evidence is that she did receive such correspondence prior to the filing of this action. See discussion on pages 22 – 24, infra of this Motion. (Smekens Aff. ¶ 4-11).

6

5. This lawsuit was filed on June 7, 2017. (Judicial Notice)

6. After this lawsuit was filed, Plaintiff served Requests for Production on Defendant, dated July 14, 2017. Request for Production number 1 sought to inspect and potentially duplicate:

> All ballots cast (including early voting, election day voting, mail-in voting, handicapped voting, provisional or affidavit ballots, military ballots or overseas ballots, void ballots, blank ballots, write-in ballots, and any other form of ballot not mentioned) during the August 30, 2016 primary election in Broward County precincts of Florida's 23rd congressional district. (Motion to Compel, Exhibit A)

7. Defendant did not timely reply to Requests for Production at all[4].

8. Plaintiff moved to compel production on August 28, 2017.

9. The records sought by this lawsuit were destroyed by the Supervisor of Elections between September 1 and 19, 2017. (See Attachment 5 to Notice of Filing Supporting Affidavits and Documents, and transcript of Nov. 6, 2017 Hearing on Motion to Compel pgs. 16-21).

10. The Broward County Supervisor of Elections, Dr. Brenda Snipes, personally ordered the destruction of the paper ballots. She wrongfully certified in the authorization to destroy that the records, i.e., ballots cast in the August 30, 2016 election, were not the subject of litigation. (Doc. 5 as attachment 5 to the Notice of Filing Supporting Affidavits and Documents).

11. Defendant never sought leave of Court to permit the destruction of the records in question. (Court Docket and Judicial Notice)

## MEMORANDUM OF LAW

## I.   STANDARD OF REVIEW

A summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, admissions, affidavits, and other materials as would be admissible in evidence on file show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fla. R. Civ. P. 1,510(c); *Moore v. Moore*, 475 So. 2d

---

[4] Defendant did ultimately file a Response to the Request to Produce on or about November 13, 2017.

7

666, 668 (Fla. 1985). The movant has the initial burden to offer sufficient admissible evidence to support his claim of the non-existence of a genuine issue. *See Harvey Bldg., Inc. v. Hailey*, 175 So. 2d 780, 783 (Fla. 1965). If affirmative defenses are raised, they must be legally sufficient and the subject of material and genuine factual dispute. (*Cufferi v. Royal Palm Development Co., Inc.*, 516 So.2d 983, 984 (Fla. 4th DCA, 1987). Any affirmative defenses pled by Defendant thus must be legally sufficient as a matter of law and there must be material evidence to support such affirmative defenses.

Once a movant tenders competent evidence to support its motion, the opposing party must come forward with counter-evidence sufficient to reveal a genuine issue. *See Landers v. Milton*, 370 So. 2d 368, 370 (Fla. 1979). It is not enough for the opposing parties to merely assert that an issue does exist. (*See Landers*, 370 So. 2d at 370; *Harvey Bldg., Inc.*, 175 So. 2d at 782). General denials in an answer are insufficient to defeat a motion for summary judgment. *See City of Anna Maria v. Hackney*, 75 So. 2d 693, 694 (Fla. 1954).

When the liability for a Chapter 119 violation is clear, the primary remedies are (1) The court ordering the agency to open its records for inspection, pursuant to Chapter 119, Florida Statutes, see, § 119.11(2), Fla. Stat.; and (2) awarding attorney's fees under section 119.12, Fla. Stat. The Fourth District Court of Appeal in the case of *Citizens Awareness Foundation, Inc. v. Wantman Group, Inc.*, 195 So.3d 396, 399 (Fla. 4th DCA, 2016) stated that the standard of review under section 119.12, Fla. Stat. is as follows;

> [A]ttorney's fees are awardable for unlawful refusal to provide public records under two circumstances: first, when a court determines that the reason proffered as a basis to deny a public records request is improper; and second, when the agency unjustifiably fails to respond to a public records request by delaying until after the enforcement action has been commenced.

## II.    PLAINTIFF'S PRIMA FACIE CASE

### a.   STATUTORY DUTIES

#### i.   PAPER BALLOT INSPECTION AND RETENTION STANDARDS

Under Federal law, 52 U.S.C. § 20701[5], **Defendant has a statutory duty to retain** "all records and papers" related to federal elections (like the case at hand) for a period of 22 months. The objective of the retention requirements as to paper ballots, and other voting records, is to preserve the original documents to avoid authenticity objections, and to aid in investigative activities as to elections. (*Kennedy v. Lynd*, 306 F.2d 222, 225 (C.A.5[th], 1962). Mr. Canova, as a candidate for the election of which ballots are sought, is exactly a person with standing to seek review of those papers and engage in investigative activities; 52 USCA § 20510 (Civil enforcement and private right of action); *True the Vote v. Hoseman*, 29 F.Supp.3d 870, 873 (N.D.Miss.,2014)(As to the right to obtain original voting records), *Scott v. Schedler*, 771 F.3d 831, 841 (C.A.5 (La.),2014)(as to investigative activities).

Likewise, under Florida law, Defendant has a statutory obligation to maintain the paper ballots[6] cast in a federal election for 22 months. See, §§101.545, 119.021, and 257.36(6), Fla. Stat., and Rule 1B-24.003, F.A.C. Furthermore, Florida Statute § 101.572 provides for public

---

[5] The entire text of the statute is as follows:
Every officer of election shall retain and preserve, for a period of twenty-two months from the date of any general, special, or primary election of which candidates for the office of President, Vice President, presidential elector, Member of the Senate, Member of the House of Representatives, or Resident Commissioner from the Commonwealth of Puerto Rico are voted for, **all records and papers** which come into his possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election, except that, when required by law, such records and papers may be delivered to another officer of election and except that, if a State or the Commonwealth of Puerto Rico designates a custodian to retain and preserve these records and papers at a specified place, then such records and papers may be deposited with such custodian, and the duty to retain and preserve any record or paper so deposited shall devolve upon such custodian. Any officer of election or custodian who willfully fails to comply with this section shall be fined not more than $1,000 or imprisoned not more than one year, or both.
[6] Florida no longer allows electronic voting and all votes must be cast on a paper ballot. See, 101.151, 101.20, 101.56042, 101.56075 Fla. Stat.

inspection of cast ballots at any reasonable time under reasonable conditions. Lastly, under the

Public Records Act, copying of the ballots is permitted. The Florida Attorney General in an issued

opinion -- concerning whether the public has a right **to inspect and obtain copies** of cast ballots,

*See* Fla. AGO 2004-11, 2004 WL 608778. --- stated:

> While section 119.07(1)(c)[7], Florida Statutes, places restrictions on who
> may handle the ballots, it does not remove the ballots from the inspection
> requirement of section 119.07(1), Florida Statutes. Nor am I aware of any provision
> restricting full inspection or copying of the ballots other than the restriction
> contained in section 119.07(1)(c), Florida Statutes, that no persons other than the
> supervisor of elections or his or her employees may touch the ballots. This office
> has previously stated that a custodian of public records may not impose a rule or
> condition on inspection that operates to restrict or circumvent a person's right of
> access.

There is really no legal dispute that Plaintiff has a statutory right to inspect and copy the

original ballots.

## ii.  FLORIDA PUBLIC RECORDS ACT

The Florida Constitution provides individuals with "the right to inspect or copy any public

record made or received in connection with the official business of any public body, officer, or

employee of the state, or persons acting on their behalf, except with respect to records exempted

pursuant to this section or specifically made confidential by this Constitution," (Art. I, §24(a), Fla.

Const.). The legislative implementation of this constitutional mandate is codified in Chapter 119,

Florida Statutes, the "Public Records Act." The Public Records Act declares that "it is the policy

of this state that all state, county, and municipal records are open for personal inspection and

copying by any person," (§119.01(1), Fla. Stat.). As provided in the Public Records Act, "every

person who has custody of a public record shall permit the record to be inspected and copied by

any person desiring to do so," (§ 119.07(1)(a), Fla. Stat.). Florida courts have articulated that the

---

[7] Florida Statute 119.07(1)(C)(2004) contains the same language as 119.07(5)(2017).

purpose of the Public Records Act, in broad terms, is "to open public records to allow Florida's citizens to discover the actions of their government." *Christy v. Palm Beach Cty. Sheriff's Office,* 698 So. 2d 1365, 1366 (Fla. 4th DCA 2010).

As any member of the public[8] , Mr. Canova had a right under the Florida Constitution to inspect the ballots cast in this election. See *Times Publ'g Co. v. City of St. Petersburg,* 558 So. 2d 487 (Fla. 2d DCA 1990) (See also, *Chandler v. City of Stanford,* 121 So. 3d 657, 660). Mr. Canova simply wanted to audit certain precincts where he was a candidate for office. Regardless, a Plaintiff's motivation is not relevant to a public records case under Chapter 119. See *Rameses, Inc. v. Demings,* 29 So. 3d 418, 421 (Fla. 5th DCA 2010).

This case as a public records lawsuit, invoked a statutory "litigation hold" on destroying any of the records at issue. See § 119.11(4). As provided by subsection (4) of the statute, no destruction of any public record that is the subject of the civil suit shall be destroyed. There is also § 119.07(1)(h), Florida Statutes, to consider. The legislature directed that public records could not be lawfully destroyed during litigation without a Court Order. The Supervisor of Elections, whether deliberate or negligent, has violated these provisions of law.

**b.  DUTY TO PRESERVE EVIDENCE UNDER PENDING DISCOVERY REQUESTS**

A duty to preserve evidence can arise by contract, by statute, **or by a properly served discovery request (after a lawsuit has already been filed).**   *Silhan v. Allstate Ins. Co.,* 236 F.Supp.2d 1303, 1311 (N.D.Fla. 2002).   Florida law recognizes a heightened duty to preserve evidence. "[A] party does have an affirmative responsibility to preserve any items or documents

---

[8] Mr. Canova's standing in this proceeding is even more robust than any member of the public.  He has standing as a Candidate on the original ballots for the election records, which are the subject of this Public Records Lawsuit.

11

that are the subject of a duly served discovery request." *Strasser v. Yalamanchi,* 783 So.2d 1087, 1093 (Fla. 4th DCA 2001). The Fourth District recognizes that striking of defenses is an appropriate sanction for failure to preserve evidence after a lawsuit is filed, even if the destruction of the evidence may have resulted from negligence. *Nationwide Lift Trucks, Inc. v. Smith*, 832 So.2d 824, 826 (Fla. 4th DCA. 2002).

There is no question in this instance that the paper ballots were the subject of a Request to Produce and Motion to Compel enforcement, prior to their destruction. (See Motion to Compel, dated August 28, 2017, Transcript November 6 2017 hearing)  There can really be no justification for the Supervisor destroying the paper ballots with the pending discovery request.  To make the matter even more alarming, is the obvious inappropriate certification of the Supervisor on the instruction for destruction, in that there was no pending litigation involving the paper ballots, (Doc. J, attached Notice of Filing Supporting Affidavits and Documents). There is no doubt that the discovery process in this lawsuit required retention of such paper ballots. The Supervisor has achieved the "ultimate" unlawful refusal to permit a public record to be inspected and copied by a blatant destruction of the records at issue, three months after the lawsuit was filed.

### c.  PLAINTIFF HAS DEMONSTRATED HIS PRIMA FACIE CASE

To allege a civil cause of action under Chapter 119, Florida Statutes, there is simply one requirement.  The documents sought are public records, which must be produced to the member of the public upon request. *Poole v. City of Port Orange*, 33 So.3d 739, 741 (Fla.5[th] DCA. 2010) The Courts have considered the issue as to whether ballots are public records and explicitly stated, "Voted ballots are public records because they memorialize the act of voting." *Rogers v. Hood*, 906 So.2d 1220, 1223 (Fla. 1st DCA 2005).   Additionally, there is no doubt the paper ballots are public records for which public inspection is to be permitted, (See § 101.572 and 119.07(5), Fla.

Stat.). Therefore, this court can easily issue a Final Judgment, under 119.11(2), Fla. Stat. to require the inspection and copying of the original ballots, but for the illegal destruction of the ballots themselves.

Once the above showing is made, then there is the consideration of whether Plaintiff is entitled to Attorney's Fees under section 119.12, Fla. Stat. To meet this statutory basis for relief, Plaintiff has to show that the agency unlawfully refused to permit a public record to be inspected or copied, §119.12, Fla. Stat. (2016). The Supreme Court in *Board of Trustees, Jacksonville Police & Fire Pension Fund v. Lee*, 189 So.3d 120, 128 (Fla.,2016) in interpreting section 119.12, Fla. Stat held

> a prevailing party is entitled to statutory attorney's fees under the Public Records Act when the trial court finds that the public agency violated a provision of the Public Records Act in failing to permit a public record to be inspected or copied. There is no additional requirement, before awarding attorney's fees under the Public Records Act, that the trial court find that the public agency did not act in good faith, acted in bad faith, or acted unreasonably. Accordingly, we approve *Lee* (**1st DCA**) and *Gonzalez* (**2nd DCA**) to the extent they are consistent with our analysis and disapprove *Althouse* (**4th DCA**), *Greater Orlando,* (**5th DCA**) and *Knight Ridder* (**3rd DCA**) to the extent that those cases require a showing that the public agency acted unreasonably or in bad faith before allowing recovery of attorney's fees under the Public Records Act. (DCA designations and bolding added)

As to the 119.12 criteria -- Defendant has clearly breached her duty to preserve the records. She, by State and Federal law, has an obligation to maintain the paper ballots for 22 months. (52 U.S.C. § 20701, 101.545, and 119.021, Fla. Stat., and Rule 1B-24.003, F.A.C.). Defendant also had two separate independent duties to maintain the ballots -- under The Public Records Act, 119.11(4) and 119.07(1)(h). Lastly, Defendant had a duty to preserve the ballots pursuant to a pending discovery request in this civil action.   It is undisputed that the Supervisor nevertheless destroyed the paper ballots. Destruction of the original paper ballot, contrary to State and Federal statutory obligation to maintain the paper ballots for 22 months, the "litigation hold" requirements

under Public Records Act, and duty to preserve the ballots pursuant to a pending discovery request in this civil action litigation, are sufficient to find that the Supervisor has violated the Public Records Act. Neither the reason for the destruction occurred nor the motives for the destruction are legally relevant. Defendant, by all of her violations of her statutory and other legal duties to preserve the ballots, has essentially put herself in the position of "unlawfully refusing" to supply the original ballots. Nevertheless, the destruction that occurred here is so violative of law that a finding that the Supervisor acted unreasonably is easy to make.

In addition, there is no doubt that the Plaintiff, Tim Canova has been requesting to examine the paper ballots since March 2017 until their destruction, and provided several written notices prior to filing this lawsuit. (Canova Aff. ¶¶ 7-13 Exhibits 1 and 2, and Exhibits A, D, E, and F Amended Complaint). The record in this instance is overflowing with correspondences and emails of discussions between the Supervisor's office and Plaintiff's agents, consisting of his attorney, Mr. Collins, and an expert consultant, Ms. Friesdat. One of the primary points of contention was always how the original paper ballots would be made available, and then whether there would be any scanning or copying of the original ballots permitted. (Canova Aff. ¶ 10, 11, 12. Exhibits B, C, D, E, and F Amended Complaint). The Supervisor would not make the ballots available for inspection until there was an acquiescence to the exclusive procedures that the Supervisor insisted be followed for inspection and copying, (See, Defendant's Affirmative Defense No. 3). The Supervisor cannot in good faith state that she was unaware that Mr. Canova was making a Public Records Request for the production and copying of the original paper ballots before the filing of this lawsuit. (Canova Aff. ¶ 13, 14, Smekens Aff. ¶ 12, Exhibit 9).   Now with the destruction of the paper ballots, Canova has been completely deprived of his ability to inspect and copy the original ballots.

III.   **AFFIRMATIVE DEFENSES**

It is important to note that Defendant first filed her answer and affirmative defenses, on October 31, 2017. This is more than one month after the destruction of the original paper ballots. Defendant's eight affirmative defenses mostly all revolve around trying to escape attorneys' fee liability under section 119.12, Fla. Stat. There can be no doubt that any of the affirmative defenses, in any way, would have thwarted or obviated the need to produce the records for inspection and copying to Canova, and the court awarding relief under 119.11(2), Florida Statutes.

Plaintiff has filed with this Motion, a Motion to Strike the Affirmative Defenses. Nevertheless, Plaintiff provides this argument in support of the position that the affirmative defenses are likewise invalid as either, legally insufficient, or not supported by any facts, so that they are subject to summary judgment.

An affirmative defense is not a denial of any of the facts of the opposing party's claim, but raises some new matter. An affirmative defense is defined as:

> "a defense which admits the cause of action, but avoids liability, in whole or in part, by alleging an excuse, justification, or other matter negating or limiting liability." *State Farm Mut. Auto. Ins. Co. v. Curran*, 135 So.3d 1071, 1079 (Fla. 2014) (citation omitted).

*Mancinelli v. Davis*, 217 So.3d 1034, 1038 (Fla.App. 4 Dist., 2017).

Under the case law, an affirmative defense must be legally sufficient, and contain specificity and supporting facts underlying the affirmative defense. See, *Southwart v. Bank of New York*, 204 So.3d 134, 136 (Fla. 4th DCA, 2016). Affirmative defenses which "on the whole [are] conclusory in their content, and lacking in any real allegations of ultimate fact demonstrating a good defense

15

to the complaint" are considered legally insufficient.  See, *Cady v. Chevy Chase Sav. and Loan, Inc.*, 528 So.2d 136, 137–38 (Fla. 4th DCA, 1988).

a. **Individual Affirmative Defenses**

**Affirmative Defense 1** states: "Plaintiff has failed to state a cause of action upon which relief may be granted."

The Plaintiff has plainly stated a cause of action under Chapter 119, Florida Statutes.  The pleading requirement for a Public Records case is quite simple and Plaintiff has amply pleaded and demonstrated the elements. (See, *Poole v. City of Port Orange*, 33 So.3d 739, 741 (Fla.5th DCA., 2010).  The test for this affirmative defense is whether "the pleader sets forth facts in his complaint upon which relief can be granted on any theory." See, *Orlovsky v. Solid Surf, Inc.*, 405 So.2d 1363, 1364 (Fla. 4th DCA, 1981). Rather it is Defendant who has failed to plead, with any specificity, what Plaintiff has failed to plead so that a cause of action has not been stated.

**Affirmative Defense 2** states:  "At all relevant times, Plaintiff requested that public records be duplicated through a scanning process utilizing equipment that would be provided by Plaintiff."

This is an admission that the Plaintiff did request to inspect, examine, and copy the original paper ballots.  Had the records not been destroyed, this issue would have been a central point of contention and a request for resolution by the court would have been sought. Now that the records have been destroyed, this affirmative defense is not legally sufficient to explain why the records are not to be made available.

**Affirmative Defense 3** states: "Plaintiff has operated in bad faith by refusing to accept public records in the manner available at the time the request was made."

16

This is not a legally cognizable affirmative defense. There is no such provision under Florida Public Records law, that a party has to accept records as offered to be produced by the agency. To the contrary, there are numerous cases that a records custodian may not establish unreasonable time or manner, and place restrictions on producing public records. The standard is set forth in the case of *Promenade D'Iberville, LLC v. Sundy*, 145 So.3d 980, 983 (Fla.App. 1st DCA, 2014), (initially an anonymous requester) which states:

> Delay in making public records available is permissible under very limited circumstances. A records custodian may delay production to determine whether the records exist, § 119.07(1)(c); if the custodian believes that some or all of the record is exempt under the Act, § 119.07(1)(d)-(e); or if the requesting party fails to remit the appropriate fees, § 119.07(4). Otherwise, "[t]he only delay permitted by the Act is the limited reasonable time allowed the custodian to retrieve the record and delete those portions of the record the custodian asserts are exempt." *Tribune Co. v. Cannella*, 458 So.2d 1075, 1079 (Fla.1984). *Unjustified* delay in making non-exempt public records available violates Florida's public records law. *Id.*
>
> \* \* \*
>
> . . .the case law is clear that unjustifiable delay to the point of forcing a requester to file an enforcement action is *by itself* tantamount to an unlawful refusal to provide public records in violation of the Act. *See Weeks v. Golden*, 764 So.2d 633, 635 (Fla. 1st DCA 2000) ("An unjustified failure to respond to a public records request until after an action has been commenced to compel compliance amounts to an unlawful refusal for purposes of section 119.12(1)[.]"); *see also Althouse v. Palm Beach County Sheriff's Office*, 92 So.3d 899, 902 (Fla. 4th DCA 2012) ("[T]he Sheriff's delay in complying with Althouse's request until after the filing of his suit amounted to an 'unlawful refusal' under section 119.12, for which fees and costs are to be awarded.").

While questions of whether there were unreasonable restrictions being insisted on by the Supervisor may at one point have been a basis for this court to rule upon, the destruction of the records supersede these issues and ipso facto requires a finding of unlawful refusal. The Supervisor has imposed the ultimate delay in this action – forever -- by destroying the original documents.

**Affirmative Defense 4** states: "Defendant has an obligation to protect exempt public records documents by disallowing duplication methods (suggested by Plaintiff) that would demand substantial amount of manipulation or programming."

Affirmative Defense 4 is not a legally cognizable affirmative defense. Nowhere in Chapter 119, Florida Statutes does it provide a "manipulation or programming" standard to thwart a public records request. The case law cited above makes plain that cast ballots are public records that are subject to being inspected and duplicated. This issue is addressed in the 2004 Attorney General Opinion, cited above, i.e. *See* Fla. AGO 2004-11, 2004 WL 608778, the opinion provides the following analysis:

> During the 2000 election and subsequent judicial proceedings arising from requests for recounts of the ballots, the courts of this state were asked to allow ballots to be rerun through optical scanners in order to segregate overvoted or undervoted ballots. In *Sentinel Communications, Inc., v. Anderson*, Case No. 01-48 CA-SW, 12th Judicial Circuit in and for Charlotte County, January 19, 2001, the supervisor of elections argued that rescanning the ballots and segregating those requested by the newspaper could result in "ballot degradation." The court rejected the supervisor's argument and concluded that "[t]he limited evidence offered by the Supervisor of the possibility of degradation of the ballots failed to show that the alleged degradation would be other than de minimus."[10] This office has not been provided with any evidence that photo copying would damage or potentially alter optically scanned ballots.

> It is clear that the Legislature has addressed the sensitive nature of voted ballots by restricting the handling of such to the supervisor of elections or the supervisor's employees. Absent a legislative or constitutional provision prohibiting or exempting voted ballots from being copied, however, such a restriction does not preclude the designated persons from copying optically scanned ballots to comply with a public records request pursuant to Chapter 119, Florida Statutes.

Further, such affirmative defense does not justify the destruction of such documents.

**Affirmative Defense 5** states: Plaintiff failed to mitigate damages by refusing to conduct and (sic) inspection when said inspection was made available.

First, this is factually inaccurate—at no time were the original ballots available for inspection and copying. Defendant asserts this "affirmative defense" without stating any facts or alleging the required elements to discern the basis of the purported "affirmative defense." To the extent that Defendant contends that she made any such offer at any time, it should be demonstrated with specific evidence in her response to this motion for Summary Judgment.

**Affirmative Defense 6** states: "Damages if any have been caused fully and completely by Plaintiff. Plaintiff has been purposely confusing and misleading, stating that scanning and copying were intended to mean the same thing; refusing hard copies and then later claiming that copying and scanning did not mean the same thing."

There are no specific facts that support this allegation. Defendant asserts her "affirmative defenses" without stating any specific facts or alleging the required elements to discern the basis of the purported "affirmative defense." In addition, with the illegal destruction of the paper ballots, this affirmative defense is now a *non sequitur*.

**Affirmative Defense 7** states: "Any damages caused by Plaintiff has been the result of Plaintiff's own actions or omissions."

Once again, there are no specific facts that support this allegation. Defendant asserts this "affirmative defense" without stating any specific facts or alleging the required elements to discern the basis of the purported "affirmative defense." Either the records were produced, pursuant to the statute, or they were not; there is no such affirmative defense available to Defendant. To the extent that damages resulted, such inquiry is not necessary for the Court to make a finding that Defendant improperly failed to produce public records under Chapter 119.

**Affirmative Defense 8** states: "Defendant has fully complied with its obligations, if any, to Plaintiff and the issues raised by Plaintiff are now moot."

There are no specific facts that support this allegation. Further, as discussed above, Defendant had an obligation to preserve the records during this litigation; Defendant admits that she did not do so. This affirmative defense is legally insufficient and is directly refuted by the Supervisor's unlawful destruction of the original paper ballots.

The issue of mootness was addressed in the case of *Grapski v. City of Alachua*, 31 So.3d 193, 198 (Fla. 1 DCA., 2010) where the court stated:

> Looking to well-established law, we note the doctrine of mootness does not apply to situations where an ongoing procedure violates the law or the violation is capable of repetition but evades proper review. *See Sims v. State*, 998 So.2d 494, 503–04 n. 8 (Fla.2008); *Holly v. Auld*, 450 So.2d 217, 218 n. 1 (Fla.1984). Moreover, because the damage occurred when the City refused to produce the Minutes, production after the fact did nothing to mollify appellants' injury, the deprivation of constitutional and statutory rights. *See Daniels v. Bryson*, 548 So.2d 679, 680 (Fla. 3d DCA 1989) ("The impermissible withholding of documents otherwise required to be disclosed constitutes, in and of itself, irreparable injury to the person making the public records request."). A holding otherwise would allow a covered body to delay meaningful access to public records, only to disclose them belatedly and after the utility of such records had faded. In that instance, an assertion of mootness because the violation had been "cured" once the requesting party gained access to the records would disguise a breach of public records law. The express language in the statutes and Florida Constitution demonstrates the City failed to comply with public records law, and the damage to appellants was not mooted.

In this case, it is undisputed that the Supervisor did not allow for copying/scanning of the original paper ballots prior to filing the lawsuit, and now has made the possibility of doing so impossible by the destruction of the originals.

**Affirmative Defense 9** states: "Plaintiff lacks standing to assert the claims for (sic) outlined in his Amended Complaint."

Defendant asserts her "affirmative defenses" without stating any specific facts or alleging the required elements to discern the basis of the purported "affirmative defense." The law is well settled that standing for a public records request is "any person," (See, §119.01(1), Fla. Stat.). A requestor is not required to explain the purpose for the request; See *Curry v. State*, 811 So.2d 736,

20

742 (Fla. 4 DCA, 2002), and a requestor can even be anonymous. See, *Chandler v. City Of Greenacres*, 140 So.3d 1080, 1084 (Fla.App. 4 DCA, 2014).

In the recent decision of *Llano Financing Group, LLC v. Yespy*, 228 So.3d 108, 111 (Fla. 4th DCA, 2017), the court analyzed the pleading requirement for a standing affirmative defense and described the trial court's function as:

> In determining whether a party has standing, the court must determine "whether the plaintiff has a sufficient interest at stake in the controversy which will be affected by the outcome of the litigation." *Wexler v. Lepore*, 878 So.2d 1276, 1280 (Fla. 4th DCA 2004).

Mr. Canova has sought the records that were part of an election of which he was a candidate. As previously noted, some of the primary objectives of the ballot retention law are to allow for investigative activities post-election and to avoid authenticity issues as to ballots. While Mr. Canova's motive and purposes for examining the ballots is irrelevant, it is easy to acknowledge that he has the requisite standing to pursue a public records request, especially of these documents, which constitute an election of which he was on the ballot. If anything, Mr. Canova has more at stake in the outcome of this proceeding than an ordinary member of the public.

**b.   Response to Miscellaneous Denials.**

**i.   Defendant's claim that the records were scanned.**

While the Defendant has not plead so, she may claim that the records were scanned prior to their destruction; and therefore, the destruction of public records is permissible because the original cast ballots are duplicates. First, this is a violation of federal and state law, that all records related to federal elections must be retained for a period of 22 months; this also violates Florida Records Retention requirements under GS3 11, (See Doc. 7 Notice of Filing Supporting Affidavits and Documents). But most importantly, the Defendant's argument concedes a violation of § 119.011(4), 119.01(7)(h), Florida Statutes.

21

Additionally, this claim is specious for the following reasons: 1.) prior to this lawsuit being filed, Defendant sought $30,933.60 to physically remove the cast ballots from storage, claiming that 8 people would have to work for six hours a day for four weeks to complete this task over the course of 960 hours—this lawsuit was filed in order to obtain access to the original cast ballots (Exhibit B to Amended Complaint); 2.) The records disposition document states that the records were destroyed because they were on a 12 month records retention schedule for state and local elections (the public records sought in this case are for a federal election and must be retained for 22 months)—not because the original records were duplicates of the scanned master copy records. (See Doc. 5 to Notice of Filing Supporting Affidavit and Documents); 3.) the scan of the records was not even available at the time this lawsuit was filed. Moreover, could not be viewed until October 19, 2017, weeks after the ballots were destroyed, (November 6, 2017 Hearing Transcript); and after the Supervisor of Elections paid a vendor $15,000.00 to reorganize the ballots and then scan them.

The Supervisor of Elections internal documents acknowledge that the records should not have been destroyed if there was pending litigation. The Supervisor's claims with regard to scanning are specious, and regardless, are immaterial given the plain language of § 119.11(4) and 119.07(1)(h), Florida Statutes. Accordingly, the Supervisor of Elections, Broward County violated § 119.07(1) Fla. Stat. and should be held liable for reasonable attorneys' fees and costs under § 119.12, Florida Statutes. This is a non-viable affirmative defense, excuse or justification that even if the Court were not to strike the Defendant's pleadings would not defeat summary judgment.

### ii. Defendant's Assertion that she did not receive Canova's May 9, 2017 Correspondence.

Counsel for the Supervisor of Elections, Ms. Norris Weeks, has asserted that she did not receive the May 9, 2017 correspondence from the undersigned counsel. Paragraph 10 of the Answer to the Amended Complaint states, "The May 9, 2017 letter attached to the Plaintiff's Amended Complaint as "Exhibit E" was not received on May 9, 2017." This denial is insufficient to that section 119.12(1)(b)'s requirement of a written request was not made prior to the filing of the public records lawsuit.

First, it is not legally relevant. The only question for consideration under section 119.12 (2016) is whether the Supervisor has "unlawfully refused to permit a public record to be inspected or copied." Defendant does not deny that a public records request concerning the production of the original paper ballots was received on or about March 10, 2017. (See ¶ 9 of the Verified Amended Complaint, and the Answer). With the illegal destruction of the originals, she has essentially now refused to permit the records to be copied.

Second, the evidence is replete with email between March 10, 2017 and May 23, 2017 by Mr. Canova's attorney, and the Supervisor's attorney, regarding various aspects of the public records request. (See Canova Aff., Smekens Aff., and all Exhibits to the Amended Complaint). All the emails reveal that there was a disagreement between Mr. Canova's attorney and Ms. Weeks as to whether original records could be duplicated. Most importantly, the Supervisor's office acknowledged receipt of the March 10, 2017 public records request and actually assigned it a case number (i.e. PR #2077). (Exhibit B to Amended Complaint).

Third and lastly, Plaintiff states one of the well-known evidentiary presumptions is that -- proof of mailing of a document to the correct address creates a rebuttable presumption that the item mailed was, in fact, received. *W.T. Holding, Inc. v. State Agency for Health Care Admin.*, 682

So.2d 1224, 1225 (Fla. 4th DCA 1996). It can be an abuse of discretion for the court to not enforce the presumption when the record is absent substantial and competent evidence that the "document" at issue was not delivered. See, *Frady v. Deringer*, 76 So.3d 1024, 1026 (Fla. 4th DCA,2011); see also, *CitiBank, N.A. for WAMU Series 2007-HE2 Trust v. Manning*, 221 So.3d 677, 682 (Fla. 4th DCA, 2017). The irrefutable evidence demonstrates that Ms. Norris-Weeks was e-mailed the letter of May 9, 2017 and the Supervisor's agent, Ms. Norris-Weeks, received it.

The evidence is un-rebuttable that Ms. Norris Weeks responded to the May 9, 2017 correspondence, (Smekens Aff. ¶ 4, Exhibit 1). Ms. Norris Weeks forwarded the undersigned counsel's May 9, 2017 correspondence to Broward Supervisor of Elections employee, Dolly Gibson, (Smekens Aff. ¶ 6, Exhibit 3).[9] The undersigned counsel also sent emails to the Defendant's counsel asking for a written response to the May 9, 2017 correspondence. (Smekens Aff. ¶¶ 7 – 9, Exhibits 4 – 6). The May 9, 2017 letter argues that the Supervisor of Elections should reduce her demand for $71,868.87 in fees because 1.) request 15 was amended seeking only inspection of vote by mail ballots; and 2.) requestors should not be charged for retrieving original ballots from storage. Ms. Norris Weeks' May 23, 2017 email (Smekens Aff. ¶ 7, Exhibit 4). (Doc. 8 to Notice of Filing Supplementary Affidavits and Documents) responds to the May 9, 2017 letter by removing costs for requests 1, 3 and 15, and reducing the fees sought by the Supervisor of Elections from $71,868.87 to $3,936.00, (as requested by the May 9, 2017 correspondence and multiple emails requesting a written response to the May 9, 2017, see Smekens Aff. ¶ 7, Exhibits 5-10).

---

[9] In matter of fact, Mr. Collins was copied on that email. Mr. Collins then made the request inadvertent disclosure of privileged materials notice to Ms. Week, as described in Rule 1.285, Fla. R. Civ. P.

24

## IV.   APPROPRIATE REMEDIES/ATTORNEYS FEES/JUDGMENT

Section 119.12, Florida Statutes, provides that if a civil action is filed against an agency to enforce the provisions of this chapter and the court determines that the agency unlawfully refused to permit a public record to be inspected or copied, the court shall assess and award against the agency responsible the reasonable costs of enforcement including reasonable attorney's fees.[10] Section 119.12, Florida Statutes, is designed to encourage voluntary compliance with the requirements of Chapter 119, Florida Statutes "If public agencies are required to pay attorney's fees and costs to parties who are wrongfully denied access to the records of such agencies, then the agencies are less likely to deny proper requests for documents." *New York Times Company v. PHH Mental Health Services, Inc.,* 616 So. 2d 27, 29 (Fla. 1993). Stated another way, the statute "has the dual role of both deterring agencies from wrongfully denying access to public records and encouraging individuals to continue pursuing their right to access public records." *Board of Trustees, Jacksonville Police & Fire Pension Fund v. Lee,* 189 So. 3d 120, 125 (Fla. 2016).

"A prevailing party is entitled to statutory attorney's fees under the Public Records Act when the trial court finds that the public agency violated a provision of the Public Records Act in failing to permit a public record to be inspected or copied. There is no additional requirement, before awarding attorney's fees under the Public Records Act, that the trial court find that the public agency did not act in good faith, acted in bad faith, or acted unreasonably." *Board of Trustees, Jacksonville Police & Fire Pension Fund v. Lee,* at 122. As pointed out above,

---

[10] Florida Statute 119.12 was changed in 2017, however the changes to the statute only apply to Public Records Requests made on or after May 23, 2017—the changes do not apply to the public records request that is the subject of this lawsuit (See Exhibit J, the Laws of Florida, Ch. 2017-21).

the Supervisor has violated the following sections of Chapter 119: 119.07(5); 119.021; 119.07(1)(h), 119.11(4), Florida Statutes.

WHEREFORE, Plaintiff, Tim Canova, requests the Court GRANT Plaintiff's Motion for Summary Judgment:

A. Finding that

    a. The original ballots are public records, which the Defendant has an obligation to produce for inspection and copying, 101.572 and 119.07(5).

    b. Defendant violated § 119.11(4) and 119.07(1)(h), Florida Statutes by destroying the original ballots.

    c. The Defendant has unlawfully refused to allow the inspection and copying of the original ballots.

B. Determining that Plaintiff is entitled to attorney's fees, under 119.12, Fla. Stat., and scheduling a subsequent hearing to determine the amount of fees due.

C. Enter a Final Judgment in favor of Plaintiff.

D. Such other relief as the court deems appropriate.

Respectfully submitted this 19th day of January, 2018.

                    **BROAD AND CASSEL LLP**

                    BY
                    LEONARD M. COLLINS, ESQ.
                    FBN: #423210
                    lcollins@broadandcassel.com
                    sbaxter@broadandcassel.com
                    FRANK P. RAINER, ESQ.
                    FBN: #436518
                    frainer@broadandcassel.com
                    kdilworth@broadandcassel.com
                    215 S. Monroe Street, Suite 400
                    Tallahassee, FL 32301
                    *Attorneys for Tim Canova*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing has been furnished this 19th day of January, 2018 by Electronic Mail to: **Burnadette Norris Weeks,** Burnadette Norris-Weeks P.A., 401 North Avenue of the Arts, Fort Lauderdale, Florida 33311.

*Attorney*

CASE NO.: CACE17-010904 (21)

IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, FLORIDA

CASE NO.: CACE17-010904 (21)
JUDGE: RAAG SINGHAL

TIM CANOVA,
Plaintiff,

v.

BRENDA C. SNIPES, IN HER OFFICIAL CAPACITY
AS BROWARD COUNTY SUPERVISOR OF
ELECTIONS, BROWARD COUNTY, FLORIDA,
Defendant.
_____/

## <u>ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT</u>

THIS CAUSE came before this Court on Plaintiff's Motion for Summary Judgment, filed January 19, 2018.  This Court, having considered the motion and response, having heard argument of counsel, having reviewed the court file, and being otherwise duly advised in the premises, rules as follows:

Tim Canova ("Plaintiff") was a candidate for U.S. Congress during the primary elections held in Broward County, Florida on August 30, 2016 (the "primary elections"). On March 10, 2017, Plaintiff, through his agent, Lulu Friesdat, made a public records request to Brenda Snipes ("Defendant") for the original paper ballots cast during the primary elections.  On June 7, 2017, Plaintiff filed suit against Defendant, alleging that Defendant had refused to produce public records for copy and/or scanning pursuant to Article I, Section 24, of the Florida Constitution and Chapter 119, Florida Statutes (collectively the "Public Records Act").  On October 19, 2017, Plaintiff filed a Verified Amended Complaint to Compel Production of Public Records Pursuant to Florida's Public Records Act following this Court's order granting Defendant's motion to dismiss

1


EXHIBIT
F

CASE NO.: CACE17-010904 (21)

Plaintiff's complaint without prejudice.    Plaintiff attached the required copies of correspondence substantiating prior written requests and entitlement to the requested records under section 119.07, Florida Statutes.  On October 31, 2017, Defendant filed her Answer to Plaintiff's Verified Amended Complaint to Compel Production of Public Records Pursuant to Florida's Public Records Act.

On November 6, 2017, this Court held a hearing on Plaintiff's Motion for Contempt and to Compel Defendant's Corporate Representative to Appear for Deposition.  During the hearing, Defendant revealed that the public records sought in this case—original paper ballots cast during the primary election—had been destroyed. *See* Records Disposition Document, dated September 1, 2017 (bearing Defendant's disposal authorization signature and the certification that such records had been disposed of in the manner specified on the date listed).

On January 19, 2018, Plaintiff filed the instant Motion for Summary Judgment for: (1) the illegal and unlawful destruction of original voted paper ballots from a congressional race during the August 2016 primary election; and (2) the unlawful refusal to produce and allow copying/scanning of those public records.  On April 20, 2018, Defendant filed her Response in Opposition to Plaintiff's Motion for Summary Judgment. On April 24, 2018, this Court heard oral argument from counsel on Plaintiff's motion for summary judgment.

A motion for summary judgment should be granted "if the pleadings and summary judgment evidence on file show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fla. R. Civ. P. 1.510(c).  "The law is well settled in Florida that a party moving for summary judgment must show conclusively the absence of any genuine issue of material fact and

2

the court must draw every possible inference in favor of the party against whom a summary judgment is sought." *Moore v. Morris*, 475 So.2d 666, 668 (Fla. 1985) (citing *Wills v. Sears, Roebuck & Co.*, 351 So.2d 29 (Fla. 1977); *see also Holl v. Talcott*, 191 So.2d 40 (Fla. 1966)). Summary judgment should not be granted unless the facts are so crystallized that nothing remains but questions of law. *Id.* (citing *Shaffran v. Holness*, 93 So.2d 94, 97–98 (Fla. 1957)). "[O]nce the moving party has submitted evidence entitling it to relief, it is not enough for the opposing party merely to assert that an issue of fact does exist. Rather, it is incumbent upon the opposing party to come forward with competent evidence revealing a genuine issue of fact." *Cong. Park Office II, LLC v. First-Citizens Bank & Tr. Co.*, 105 So.3d 602, 610 (Fla. 4th DCA 2013) (quoting *Landers v. Milton*, 370 So.2d 368, 370 (Fla. 1979)) (internal citations omitted). *See also, Corbitt v. Kuruvilla*, 745 So.2d 545, 548 (Fla. 4th DCA 1999) (also finding "[i]t is not enough for the opposing party merely to assert that an issue does exist").

It is undisputed that the original paper ballots cast during the primary elections are public records pursuant to section 119.011(12), Florida Statutes. *See* Op. Att'y Gen. Fla. 2004–11 (2004) ("While section 119.07(1)(c), Florida Statutes, places restrictions on who may handle the ballots, **it does not remove the ballots from the inspection requirement of section 119.07(1), Florida Statutes**.") (emphasis added). "When the movant produces sufficient evidence to support summary judgment, it is the [opposing party's] burden to come forward with either counter-evidence or justifiable inferences from the evidence presented." *O'Donnell v. BellSouth Advert. & Publ'g Corp.*, 906 So.2d 1264, 1264 (Fla. 4th DCA 2005) (quoting *Nat'l Indem. Co. v. Consol. Ins. Servs.*, 778 So.2d 404 (Fla. 4th DCA 2001)). Had the ballots not been destroyed, this Court would have been required to enforce the Public Records Act and order

CASE NO.: CACE17-010904 (21)

Defendant to produce the records for inspection and copying "while in the custody of the supervisor of elections . . . **at any reasonable time, under reasonable conditions** . . . ." §101.572, Fla. Stat. (emphasis added). Thus, the issue before this Court is whether Defendant's affirmative defenses or the evidence offered in opposition to summary judgment raise a genuine issue of material fact sufficient to defeat Plaintiff's motion for summary judgment. Therefore, this Court makes the following findings.

The constitution grants every person the fundamental right to inspect or copy public records. Whether the public chooses to inspect or copy is not the choice of the governmental agency which has custody of the records. *See Fuller v. State*, 17 So.2d 607, 607 (1944) ("The best reasoned authority in this country holds that **the right to inspect** public records **carries with it the right to make copies**."). "**Every person has the right to inspect or copy any public record** made or received in connection with the official business of any public body, officer, or employee of the state, or persons acting on their behalf . . . ." Fla. Const. Art. I, § 24 (emphasis added). "It is the policy of this state that **all state, county, and municipal records are open for personal inspection and copying by any person**. Providing access to public records is a duty of each agency." § 119.01, Fla. Stat. (emphasis added). The general purpose of the Public Records Act "is to open public records to allow Florida's citizens to discover the actions of their government." *Christy v. Palm Beach Cty. Sheriff's Office*, 698 So.2d 1365, 1366 (Fla. 4th DCA 1997) (citing *City of Riviera Beach v. Barfield*, 642 So. 2d 1135, 1136 (Fla. 4th DCA 1994)).

First, Defendant argues that the destruction of the original paper ballots was unintentional and therefore did not constitute a refusal in violation of the Public Records Act. Under Florida law, "[t]he official ballots and ballot cards **shall be open for public**

4

CASE NO.: CACE17-010904 (21)

inspection or examination while in the custody of the supervisor of elections . . . **at any reasonable time**, under reasonable conditions . . . ." §101.572, Fla. Stat. (emphasis added).  Under federal law, "[e]very officer of election **shall retain and preserve, for a period of twenty-two months from the date of any** general, special, or **primary election** . . . or primary election of which candidates for the office of . . . Member of the House of Representatives . . . are voted for, **all records and papers** which come into his possession . . . ."  52 U.S.C. § 20701 (emphasis added).  Furthermore, section 119.07(1)(h), Florida Statutes, provides that requested records shall "not be disposed of for a period of 30 days after the date on which a written request . . . was served . . . ." § 119.07(1)(h), Fla. Stat.  The Records Disposition Document, dated September 1, 2017 indicates that Defendant authorized the destruction of the requested records before the twenty-two (22) month period of retention had elapsed.   The Records Disposition Document, dated September 1, 2017 further certifies that such records were destroyed in the time and manner specified.  This Court finds such premature destruction of the records unlawful and in violation of the Public Records Act.

Furthermore, section 119.11(4), Florida Statutes, provides that

> (4)  **Upon service of a complaint**, counterclaim, or cross-claim in a civil action brought to enforce the provisions of this chapter, **the custodian of the public record** that is the subject matter of such civil action **shall not** transfer custody, **alter, destroy, or otherwise dispose of the public record sought to be inspected and examined**, notwithstanding the applicability of an exemption or the assertion that the requested record is not a public record subject to inspection and examination under s. 119.07(1), **until the court directs otherwise**. The person who has custody of such public record may, however, at any time permit inspection of the requested record as provided in s. 119.07(1) and other provisions of law.

5

CASE NO.: CACE17-010904 (21)

§119.11(4), Fla. Stat. (emphasis added); *see also* §119.07(1)(h), Fla Stat. ("If a civil action is instituted . . . the custodian of public records **may not dispose of the record except by order of a court** of competent jurisdiction after notice to all affected parties.") (emphasis added). Even if no such 'litigation hold' existed, parties have a duty to preserve evidence while a case is pending before a court. *See Eugene Strasser, M.D., P.A. v. Bose Yalamanchi, M.D., P.A.*, 783 So. 2d 1087, 1093 (Fla. 4th DCA 2001) (finding that even when a party is "under no statutory or contractual duty to maintain such evidence, a party does have an affirmative responsibility to preserve any items or documents that are the subject of a duly served discovery request."). Defendant's lack of intent to destroy evidence while this case was pending is irrelevant. *See Nationwide Lift Trucks v. Smith*, 832 So. 2d 824, 826 (Fla. 4th DCA 2002) (holding that dismissal was an appropriate sanction for failing to preserve evidence "even though the destruction of evidence may have resulted from negligence rather than an intent to obstruct justice."). This Court finds Defendant's violation is two-fold: (1) violation of state and federal retention requirements and (2) violation of the affirmative responsibility to preserve evidence.

Second, Defendant argues that any delay in the production of the records was a result of Plaintiff's unreasonable requests and further claims that a custodian of public records has broad discretion in determining if a records request is reasonable. This assertion is contrary to the statutory requirements and plain and ordinary meaning of the Public Records Act which provides that "[e]very person who has custody of a public record **shall permit the record to be inspected and copied by any person** desiring to do so, **at any reasonable time**, **under reasonable conditions**, and under supervision by the custodian of the public records." §119.07(1)(a), Fla. Stat. (emphasis

6

added).   There is no heightened requirement imposed upon on the sufficiency of an individual's request for records "[g]iven that the right of access to public records is a 'cornerstone of our political culture,' it is well settled that the [Public Records] Act must be liberally construed in favor of access, and all exemptions must be limited to their stated purpose."  *See Palm Beach Cty. Sheriff's Office v. Sun-Sentinel Co., LLC*, 226 So.3d 969, 972 (Fla. 4th DCA 2017) (internal citations omitted).

Section 119.07, Florida Statutes, "has the dual role of both deterring agencies from wrongfully denying access to public records and encouraging individuals to continue pursuing their right to access public records." *Bd. of Trs. v. Lee*, 189 So.3d 120, 125 (Fla. 2016).  Section 119.07(1)(c), Florida Statutes, defines good faith as "[a] **good faith response includes making reasonable efforts to determine** from other officers or employees within the agency **whether such a record exists** and, if so, the location at which the record can be accessed." §119.07(1)(c), Fla. Stat. (emphasis added).  The addition of "good faith" to the language of section 119.07, Florida Statutes, "was actually **meant to strengthen the responsibilities of records custodians by imposing an explicit requirement on public agencies** that they act in good faith in responding to public records requests." *Bd. of Trs. v. Lee*, 189 So.3d at 127–128 (emphasis added).  The Records Disposition Document, dated September 1, 2017 indicates that the public records sought were destroyed in September 2017. Nonetheless, Defendant filed her Answer and Affirmative Defenses on October 31, 2017, and the destruction of the original paper ballots was not revealed until November 6, 2017.

Third, Defendant urges this Court to read section 119.12, Florida Statutes, as requiring a finding of intent on the part of the agency before imposing sanctions and to

read section 119.07, Florida Statutes, as permitting an agency to use discretion in determining if a request is reasonable.  The statutes making up the Public Records Act are clear and unambiguous. The terms in the statutes must be afforded their plain and ordinary meaning and general principles of statutory construction apply. "The doctrine of *in pari materia* is a principle of statutory construction that requires that statutes relating to the same subject or object be construed together to harmonize the statutes and to give effect to the Legislature's intent." *Fla. Dep't of State v. Martin*, 916 So.2d 763, 768 (Fla. 2005) (citing *Forsythe v. Longboat Key Beach Erosion Control Dist.*, 604 So.2d 452, 455 (Fla. 1992)).   "The purpose of the Public Records Act is to fulfill the constitutional requirement of making public records openly accessible to the public." *Bd. of Trs. v. Lee*, 189 So.3d at 125.  "If an individual is required to enforce his or her entitlement to public records through the filing of a civil action and prevails, **the purpose of the statute is frustrated if the prevailing individual must incur the attorney's fees**—rather than the public agency that violated the Public Records Act—merely because the individual is unable to establish that the public agency acted unreasonably or in bad faith." *Id.* at 128 (emphasis added).   "It is a cardinal rule of statutory interpretation that courts should avoid readings that would render part of a statute meaningless." *Forsythe v. Longboat Key Beach Erosion Control Dist.*, 604 So.2d 452, 456 (Fla. 1992).  Here, Plaintiff filed suit to compel the production of public records but the records sought were destroyed while this case was pending before this Court.  As such, the only remedy available to Plaintiff is for this Court to grant summary judgment and award attorney's fees.  *See* §119.12, Fla. Stat.

In this matter, it is undisputed that the original paper ballots were destroyed.  *See* Records Disposition Document, dated September 1, 2017.  "Thus, no real or genuine

CASE NO.: CACE17-010904 (21)

factual issue exist[s]." *Grier v. Bankers Land Co.*, 539 So. 2d 552, 554 (Fla. 4th DCA 1989). Defendant has not presented any evidence refuting that the public records sought were destroyed while this case was pending before this Court. Instead, Defendant opposes the motion for summary judgment by alleging that Plaintiff's public record request was unreasonable, that Defendant did not cause an unjustifiable delay when responding to Plaintiff's request, and that Defendant never refused to produce the requested records. However, Defendant may not defeat summary judgment by raising purely paper issues where the pleadings and evidence show that such defenses are without substance in fact or law. *See id.*; *see also Reflex, N.V. v. UMET Tr.*, 336 So. 2d 473 (Fla. 3d DCA 1976); *Soper v. Stine*, 184 So.2d 892 (Fla. 2d DCA 1966). Accordingly, it is:

ORDERED AND ADJUDGED that Plaintiff's Motion for Summary Judgment is hereby GRANTED. The Court retains jurisdiction to determine Plaintiff's reasonable attorneys' fees, pursuant to an evidentiary hearing to be set by this Court upon further notice.

DONE AND ORDERED in Chambers at Fort Lauderdale, Broward County, Florida on May _____, 2018.

RAAG SINGHAL
Circuit Court Judge

RAAG SINGHAL
Circuit Court Judge

MAY 1 1 2018

A TRUE COPY

cc: All persons listed on e-Portal Service List.