UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

TIM CANOVA,

    Plaintiff,

v.                                        Case No:   0:20-cv-61328-SINGHAL

BRENDA C. SNIPES, DOZEL SPENCER
and the BROWARD COUNTY SUPERVISOR
OF ELECTIONS,

    Defendants.
_____/

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

COMES NOW, Plaintiff, TIM CANOVA ("Canova" or "Plaintiff"), by and through the undersigned counsel, and files this Response in Opposition to the Motion to Dismiss filed by Plaintiffs in this matter, and in support thereof, states:

## INTRODUCTION

Dismissal of this matter is improper. Canova has properly stated a cause of action because Defendants' destruction of ballots resulted in a deprivation of his constitutional right to candidacy in a fair election in which ballots are properly counted. The right to vote and the right to run for political office are intertwined. Canova's Fourteenth Amendment rights were likewise violated by Defendants' improper destruction of ballots. Further, a presumption of impropriety in the election process arises from Defendants' destruction of the ballots in contravention of Florida's Public Records Act. Defendants' argument that the Supervisor of Elections cannot be sued is incorrect. Defendants are not entitled to qualified immunity due to their violations of Canova's constitutional rights. Finally, dismissal with prejudice is improper.

## FACTUAL BACKGROUND

1. On June 16, 2020, Plaintiff, Tim Canova, filed a three count Complaint in the Seventeenth Judicial Circuit Court in and for Broward County, Florida, Case No. CACE20-009862, against Defendants Brenda Snipes, Dozel Spencer, and the Broward County Supervisor of Elections ("Defendants").

2. On July 2, 2020, Plaintiff filed a three count Complaint in the United States District Court for the Southern District of Florida, Case No. 20-cv-61328, against Defendants.

3. On October 15, 2020, Defendants removed Plaintiff's case that was filed in the Seventeenth Judicial Circuit Court in and for Broward County, Florida to the United States District Court for the Southern District of Florida, where it was assigned Case No. 20-cv-62100.

4. On October 20, 2020, Defendants filed a Motion to Dismiss in Case No. 20-cv-61328.

5. On October 22, 2020, Defendants filed a Motion to Dismiss in Case No. 20-cv-62100.

6. On October 27, 2020, this Court entered its order consolidating the two cases as Case No. 20-cv-61328-SINGHAL.

7. Thus, Plaintiff's Response in Opposition addresses arguments made in both motions to dismiss.

8. Further, and notably, Plaintiff in this matter previously brought a cause of action against Defendants before the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida, titled *Tim Canova v. Brenda C. Snipes, in her Official Capacity as Broward County Supervisor of Elections, Broward County, Florida*, Case No. CACE-17-010904.

9. To the Complaint, Plaintiff attached as an exhibit the Order granting Plaintiff's Motion for Summary Judgment in the case before the Seventeenth Judicial Circuit. This Court may

consider the exhibits to the Complaint in ruling on the Motion to Dismiss. *See*, *e.g.*, *Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016). The Order from the prior case is directly relevant to the analysis of the Motion to Dismiss.

## ARGUMENT AND MEMORANDUM OF LAW

**A. Defendants' argument that the Supervisor of Elections lacks the "capacity to be sued" is disingenuous and incorrect.**

Defendants argue in their Motion to Dismiss that the Supervisor of Elections cannot be sued under Florida law. However, this is a disingenuous argument that attempts to utilize a legal technicality to avoid addressing the substantive content of the Complaint in this matter.

Defendants' argument on this issue is premised on section 768.289(9)(a), Florida Statutes, which reads:

> (9)(a)   No officer, employee, or agent of the state or of any of its subdivisions shall be held personally liable in tort or named as a party defendant in any action for any injury or damage suffered as a result of any act, event, or omission of action in the scope of her or his employment or function, unless such officer, employee, or agent acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property. However, such officer, employee, or agent shall be considered an adverse witness in a tort action for any injury or damage suffered as a result of any act, event, or omission of action in the scope of her or his employment or function. **The exclusive remedy for injury or damage suffered as a result of an act, event, or omission of an officer, employee, or agent of the state or any of its subdivisions or constitutional officers shall be by action against the governmental entity, or the head of such entity in her or his official capacity, or the constitutional officer of which the officer, employee, or agent is an employee**, unless such act or omission was committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property. The state or its subdivisions shall not be liable in tort for the acts or omissions of an officer, employee, or agent committed while acting outside the course and scope of her or his employment or committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

§ 768.289(9)(a), Fla. Stat. (2019) (emphasis added).

The text of the statute in question demonstrates that the Supervisor of Elections may properly be named as a defendant in legal proceedings. The phrase "shall be by action against the governmental entity" demonstrates that the Supervisor of Elections is properly named as a defendant in this matter, in light of Defendants' own admission that a "supervisor of elections is an independent constitutional officer elected at the county level by the people of Florida." *See* Motion to Dismiss, at page 3.

Despite Defendants' citations to scattered case law, federal courts in Florida have repeatedly allowed claims brought against the Supervisor of Elections to proceed. In *Kaimowitz v. Supervisor of Elections*, 2016 U.S. Dist. LEXIS 153571 (N.D. Fla. Oct. 25, 2016), the plaintiff filed a constitutional claim against the Alachua County Supervisor of Elections, which was **allowed to proceed**. In *Rhodes v. Supervisor of Elections*, 2012 U.S. Dist. LEXIS 95701 (N.D. Fla. 2012), the plaintiff filed a claim based on alleged discrimination against the Leon County Supervisor of Elections, which was **allowed to proceed**.

Further, the title "Supervisor of Elections" applies both to the office itself and the person who serves as the Supervisor of Elections. The distinction between the person who holds the office and the office itself is a legal technicality. As noted *supra*, Defendants admitted that the Supervisor of Elections is "an independent constitutional officer," and thus is *sui juris*.

Nonetheless, even if this Court finds that the Supervisor of Elections is not *sui juris* in this matter, Canova should be permitted to amend his complaint to name Peter Antonacci in his official capacity as Broward County Supervisor of Elections as a defendant. It should be noted that Mr. Antonacci will be leaving the position of Supervisor of Elections in January following this November's elections.

### B. The Motion to Dismiss must be denied because Defendants incorrectly assert that Canova has failed to state a claim for constitutional violations.

*1. Canova has properly stated a claim for violations of his constitutional rights.*

Canova has a constitutional right to run as a candidate for political office in a fair election in which votes are properly counted. In his Complaint, Canova properly stated a claim for violations of his constitutional rights resulting from the improper destruction of paper ballots.

Primarily, Federal Rule of Civil Procedure 12(b)(6) governs motions to dismiss for failure to state a claim upon which relief may be granted. Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "The Court must also accept the plaintiff's well pled facts as true and construe the complaint in the light most favorable to the plaintiff." *Dominguez v. Design by Nature Corp.*, 2008 U.S. Dist. LEXIS 83467, at *2 (S.D. Fla. Sept. 25, 2008) (citing *Caravello v. Am. Airlines, Inc.*, 315 F. Supp. 2d 1346, 1348 (S.D. Fla. 2004)).

Rule 8 allows plaintiffs "considerable leeway" in framing their complaints, but the Eleventh Circuit requires that plaintiffs seeking to bring claims pursuant to 42 U.S.C. § 1983 must allege "with some specificity the facts which make out" the claims. *Keating v. City of Miami*, 598 F.3d 753, 762-63 (11th Cir. 2010) (citing *GJR Invs., Inc. v. Cty. of Escambia*, 132 F.3d 1359, 1367 (11th Cir. 1998)). "In a § 1983 action, 'a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Canova has clearly pleaded violations of his constitutional rights in the Complaint with sufficient facts to support the claims. Canova was deprived of his right to candidacy by the failure of Defendants to conduct the election in a manner free of irregularities, which included maintaining the ballots for public inspection pursuant to Florida's Public Records Act. Canova included in the Complaint sufficient facts to demonstrate that the actions of Defendants in destroying the paper

ballots from the 2016 Democratic primary election constituted a deprivation of Canova's constitutional right to be a candidate in a fair election in which votes are properly counted. The destruction of the ballots in contravention of Florida's Public Records Act constituted such an attack on Canova's candidacy that not only was his right to candidacy at the time harmed by the actions of Defendants, but he was likewise deterred from exercising his right to candidacy again in the future. Further, Canova is entitled to a *presumption* that his right to candidacy was further harmed by elections irregularities, due to Defendants' spoliation of evidence. Defendants should not be allowed to simply destroy evidence of irregularities in the 2016 election to escape any repercussions for their actions.

Connected to Canova's First Amendment right to run for political office is his right, as an American citizen, to "free and fair elections." *See Westchester Cty. Independence Party v. Astorino*, 137 F. Supp. 3d 586 (S.D.N.Y. 2015) (citing *U.S. v. Schermerhorn*, 713 F. Supp. 88 (S.D.N.Y. 1989)). Because the government has "a compelling interest in preserving the integrity of its election process," it may only take action "when necessary to ensure that elections are fair and honest." *Eu v. San Francisco Cty. Democratic Cent. Comm.*, 489 U.S. 214, 231 (1989) (citing *Rosario v. Rockefeller*, 410 U.S. 752, 761 (1973); *Storer v. Brown*, 415 U.S. 724, 730 (1974)). Actions by government officials that negatively impact the fairness of an election thus deprive a candidate of the First Amendment right to participate in the election.

Further, Canova has properly pleaded a claim for violation of his Fourteenth Amendment rights because Defendants' intentional destruction of ballots – depriving Canova of the ability to inspect and ascertain the validity of the ballots and proper counting thereof – constituted an "intentional" action that "erode[d] the democratic process." *Hendon v. N. Carolina State Bd. of Elections*, 710 F.2d 177, 182 (4th Cir. 1983) ("Whether the irregularity amounts to a constitutional

claim depends on its severity, whether it was intentional or more of a negligent failure to carry out properly the state election procedures, and whether it erodes the democratic process.").

Defendants admit in their Motion to Dismiss that Canova was deprived of his rights under the Fourteenth Amendment, but argue that he had a "post-deprivation remedy" available to him in the form of a suit to enforce Florida's Public Records Act. Thus, dismissal is improper, because Defendants admit that a deprivation of Canova's rights occurred. Defendants are incorrect, however, in their assertion that there was an "adequate post-deprivation" remedy, since they appear to believe that a declaration that Defendants violated the Public Records Act is sufficient to remedy an intentional action that eroded the democratic process.

Canova likewise has properly pleaded a claim for civil conspiracy. Defendants conspired, by engaging in a plan to destroy the ballots and actually destroying the ballots, to deprive Canova of his constitutional rights. *See, e.g.*, *Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*, 172 F.3d 238, 254 (3d Cir. 1999); *Marchese v. Umstead*, 110 F. Supp. 2d 361, 371 (E.D. Pa. 2000)).

2. *The First and Fourteenth Amendments protect Canova's right to run for political office, as well as the right to participate in a fair election in which votes are properly counted.*

"[T]he First Amendment . . . protects the right of citizens 'to band together in promoting among the electorate candidates who espouse their political view.'" *Clingman v. Beaver*, 544 U.S. 581, 586 (2005). "[T]he right to choose representatives belongs not to the States, but to the people." *U.S. Term Limits v. Thornton*, 514 U.S. 779, 820-21 (1995). "The right of qualified voters within a state to cast their ballots and have them counted at Congressional elections . . . is a right secured by the Constitution." *U.S. v. Classic*, 313 U.S. 299, 314 (1941). The Supreme Court of the United States has likewise found that the rights of voters and rights of political candidates are linked. *See Bullock v. Carter*, 405 U.S. 134, 143 (1972) ("[L]aws that affect candidates always have at least some theoretical, correlative effect on voters.")

Building on the link between the right to vote and the right to run as a candidate for political office, courts in the Eleventh Circuit have held that the right to political candidacy is protected by the First Amendment. *See*, *e.g.*, *Whaley v. Smith*, 2018 U.S. Dist. LEXIS 236746, at *5 (N.D. Fla. Dec. 11, 2018). The Eleventh Circuit Court of Appeals has held that the right to run for political office is protected by the First Amendment, subject to a "constitutional-right-versus-the-state's-interests" analysis. *Randall v. Scott*, 610 F.3d 701, 713 (11th Cir. 2010).

The very county at issue in the instant case is the one that was at the heart of the Supreme Court's opinion in *Bush v. Gore*. *See* 531 U.S. 98 (2000). In *Bush v. Gore*, the Supreme Court addressed the application of the Fourteenth Amendment to the counting of ballots following the 2000 presidential election. Throughout the opinion, the Supreme Court addressed Broward County's haphazard approach to the counting of ballots. In applying the Fourteenth Amendment's Equal Protection Clause to the right to vote, the Supreme Court stated that "[h]aving once granted the right to vote on equal terms, the State may not, by later arbitrary and disparate treatment, value one person's vote over that of another." *Id.* at 104-05.

A case cited by Defendants cuts to the core issue in this matter: the risk that votes will go uncounted or be improperly counted. Defendants cite *Jacobson v. Fla. Sec'y of State*, 2020 U.S. App. LEXIS 28078 (11th Cir. Sept. 3, 2020) for the proposition that such a risk would constitute a violation of constitutional rights for voters and political candidates. *See id.* at 59 (stating that "the risk that some votes will go uncounted or be improperly counted" is a First Amendment issue to be considered within the framework established by *Anderson v. Celebrezze*, 460 U.S. 780 (1983) and *Burdick v. Takushi*, 504 U.S. 428 (1992)) (citing *Democratic Exec. Comm. of Fla. v. Lee*, 915 F.3d 1312 (11th Cir. 2019); *Wexler v. Anderson*, 452 F.3d 1226, 1232 (11th Cir. 2006)). In *Lee*, the Eleventh Circuit noted that "one of our most basic and cherished liberties" is "the right to vote

and have that vote counted." *Lee*, 915 F.3d at 1324 (quoting *Fla. Democratic Party v. Detzner*, 2016 U.S. Dist. LEXIS 143620, at *8 (N.D. Fla. Oct. 16, 2016)).

The Eleventh Circuit has stated that one reason for the "stringent protection" of First Amendment rights is the "fear that, if these rights are not jealously safeguarded, persons will be deterred, even if imperceptibly, from exercising those rights in the future." *Cate v. Oldham*, 707 F.2d 1176, 1189 (11th Cir. 1983) (citing *City of Long Beach v. Bozek*, 31 Cal. 3d 527, 531 (Cal. 1982)). Thus, the chilling effect of government actions on future exercises of free speech is likewise a consideration when analyzing the application of the First Amendment. *See id.*

In the instant matter, the destruction of ballots in contravention of Florida's Public Records Act is a clear threat to the right to vote and have that vote counted. *Lee*, 915 F.3d at 1324. This right applies both to the voters who cast ballots in the 2016 Democratic primary election, as well as to the candidates who were running for office in that election. *See*, *e.g.*, *Randall*, 610 F.3d at 713. Not only did the destruction of the ballots – depriving members of the public, including Canova, of the opportunity to inspect the ballots – constitute a violation of Canova's rights at the time of the destruction, but it constituted an improper chilling effect on those rights in the future. *See*, *e.g.*, *Cate*, 707 F.2d 1189. Public faith in the democratic process is essential to the proper functioning of our system of government. *See*, *e.g.*, *Maryland v. Universal Elections, Inc.*, 862 F.Supp. 2d 457, 467 (D. Md. 2012) (finding that attempts to suppress the votes of a minority group caused damage to public faith in the democratic process).

The destruction of the ballots in the instant case in response to a properly filed public records request constitutes a clear threat to public trust in the democratic process. Canova was deprived of his right to candidacy by the failure of Defendants to conduct the election in a manner free of irregularities, which included maintaining the ballots for public inspection pursuant to Florida's Public Records Act.

> 3. *Canova is entitled to a rebuttable presumption that his constitutional rights were violated, based on Defendants' destruction of the original ballots.*

Defendants' destruction of the paper ballots cast in the 2016 Democratic primary constituted improper spoliation of evidence that creates a rebuttable presumption that Defendants violated Canova's constitutional rights. *See Byrnie v. Town of Cromwell Bd. of Educ.*, 243 F.3d 93, 107 (2d Cir. 2001).

"The spoliation of evidence germane 'to proof of an issue at trial can support an inference that the evidence would have been unfavorable to the party responsible for its destruction.'" *Id.* (quoting *Kronisch v. U.S.*, 150. F.3d 112, 126 (2d Cir. 1998)). Canova is entitled to a presumption that there were irregularities in the casting or counting of ballots during the 2016 Democratic primary election such that he was deprived of his right to run for political office.

Defendants cannot deny that the improper destruction of ballots occurred. Indeed, Defendants cite in their motion to *Canova v. Snipes*, Case No. CACE 17-010904 (Fla. Broward Cir. Ct. May 11, 2018), in which the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida, ruled that Snipes had violated Florida's Public Records Act by way of destruction of ballots. In seeking to review the original ballots case in the 2016 Democratic primary election, Canova intended to ascertain whether the ballots cast in that election were properly submitted and recorded and that no election interference had occurred.

It is also important to note that Defendants unquestionably violated federal statute by way of destruction of the ballots. Although the Seventeenth Judicial Circuit was concerned with Defendants' violations of *Florida* statute, the federal statutes likewise require retention of ballots for a period after a primary election for the House of Representatives:

> §20701. Retention and preservation of records and papers by officers of elections; deposit with custodian; penalty for violation
> Every officer of election shall retain and preserve, **for a period of twenty-two months from the date of any general, special, or primary election** of which candidates for the office of President,

> Vice President, presidential elector, Member of the Senate, **Member of the House of Representatives**, or Resident Commissioner from the Commonwealth of Puerto Rico are voted for, all records and papers which come into his possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election, except that, when required by law, such records and papers may be delivered to another officer of election and except that, if a State or the Commonwealth of Puerto Rico designates a custodian to retain and preserve these records and papers at a specified place, then such records and papers may be deposited with such custodian, and the duty to retain and preserve any record or paper so deposited shall devolve upon such custodian. Any officer of election or custodian who willfully fails to comply with this section shall be fined not more than $1,000 or imprisoned not more than one year, or both.

52 U.S.C. § 20701 (2020) (emphasis added).

Defendants allege in the Motion to Dismiss that "[t]he destruction of paper ballots had no impact on Plaintiff's candidacy." While this may be true, the destruction of the ballots made it impossible for Canova – or any other member of the public – to ascertain the truth of this statement. That fact is essential to the instant matter. Canova is entitled to an adverse inference as to the contents of the original paper ballots, thus demonstrating that the destroyed ballots *did indeed* demonstrate irregularities in the election process that Defendants' bear the burden of rebutting. Clearly, dismissal is improper in light of this fact.

By destroying the original ballots, Snipes deprived Canova of ever having the opportunity to assess the validity of the ballots and the election results. Due to the intentional spoliation of evidence by Snipes, Canova is entitled to an adverse inference as to the contents of the original ballots – in this case, that the ballots showed irregularities such that Canova was deprived of his First Amendment right to candidacy in a fair democratic election. *See Byrnie*, 243 F.3d at 107-08. Broward County previously came under national scrutiny for its approach to counting ballots. *See Bush v. Gore*, 531 U.S. at 105 ("Much of the controversy seems to revolve around ballot cards designed to be perforated by a stylus but which, either through error or deliberate omission, have

not been perforated with sufficient precision for a machine to count them."). Defendants should not be allowed to avoid such future scrutiny by simply destroying the evidence.

Defendants argue as well that Canova's rights were not violated because the destruction occurred "more than a year after the election." This argument simply serves to highlight the pattern of obfuscation and delay in which Defendants engaged while Canova attempted to obtain access – first by public records request, and then by litigation – to review the ballots. The original public records request occurred a mere four months following the election, but Defendants proceeded to delay for an additional six months before destroying the records in question. Defendants then failed to disclose the fact that the ballots had been destroyed for an additional two months.

Defendants claim that Canova should have brought his constitutional claims as part of the earlier case, Case No. CACE 17-010904 in Florida's Seventeenth Judicial Circuit. However, this is incorrect. Canova's right to assert the violation of his constitutional rights did not ripen until the Seventeenth Judicial Circuit adjudicated the public records issue in Canova's favor. As this Court is aware, the determination of ripeness for adjudication of a federal claim requires an injury that is actual or imminent. *See Ramirez v. Texas Low-Level Radioactive Waste Disposal Auth.*, 28 F. Supp. 1019, 1021 (W.D. Tex. 1998) (citing *Valley v. Rapides Parish Sch. Bd.*, 145 F.3d 329 (5th Cir. 1998)). Canova initially filed suit seeking simply to enforce his right to review the ballots pursuant to Florida's Public Records Act. Only after the ballots were destroyed – and Defendants' violation of the Public Records Act confirmed – did Canova's suit for deprivation of his rights ripen. Further, the destruction of the ballots created a presumption of impropriety in the contents of the ballots that did not exist prior to that point.

Based on the foregoing, Canova has clearly stated a cause of action upon which relief has been granted. Not only did Canova sufficiently outline the facts supporting his claims, but Canova

demonstrated that he is entitled to a presumption of wrongdoing on the part of Defendants based on their spoliation of the relevant evidence.

    4. *Canova has properly stated a claim for violation of Article VI of the Florida Constitution.*

Defendants allege in the Motion to Dismiss that Canova is not entitled to damages because he has alleged a violation of Article VI of the Florida Constitution. Although this claim made pursuant to the Florida Constitution was included in the case filed with the state court, which was subsequently removed to the federal court, Canova is nonetheless entitled to recover on this claim.

In the cases cited by Defendants, the rule for determining whether monetary damages are available based on a government agent's violation of a constitutional right is that "the legislature must have enacted a general law waiving the State's sovereign immunity for the claim." *Bradsheer v. Fla. Dep't of Highway Safety & Motor Vehicles*, 20 So. 3d 915, 920 (Fla. 1st DCA 2009).

The applicable law waiving Defendants' sovereign immunity in the instant matter is Florida's Public Records Act. The Public Records Act states that "[p]roviding access to public records is a duty of each agency." § 119.01(1), Fla. Stat. (2019). The Public Records Act even provides for civil action against a state agency for violations of the Act, including recovery of attorneys' fees. *See* § 119.12, Fla. Stat. (2019). Because the Florida Legislature clearly intended for government agencies to be bound by the Public Records Act, Defendants' violations of the Act in this matter constituted a waiver of any sovereign immunity as it relates to the instant action.

### C. Defendants are not entitled to qualified immunity due to their violations of Canova's constitutional rights.

Defendants are not entitled to qualified immunity. Canova has properly stated a cause of action for violations of his constitutional rights, pursuant to 42 U.S.C. § 1983, and thus Defendants may not avail themselves of qualified immunity in this matter.

"Under the doctrine of qualified immunity, government officials acting within their discretionary authority are immune from suit unless the official's conduct 'violates 'clearly established [federal] statutory or constitutional rights of which a reasonable person would have known.''" *Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010) (quoting *GJR Invs., Inc. v. Cty. of Escambia*, 132 F.3d 1359, 1366 (11th Cir. 1998)). "To determine whether a government official is entitled to qualified immunity, the court first must decide whether the plaintiff has ''asserted a violation of a constitutional right at all.''" *McCormick v. City of Lawrence*, 325 F. Supp. 2d 1191, 1200 (D. Kan. 2004) (citing *Moore v. City of Wynnewood*, 57 F.3d 924, 931 (10th Cir. 1995)).

Canova has properly stated a cause of action for violations of his constitutional rights. Defendants deprived Canova of his First and Fourteenth Amendment rights to participate in a fair election. The destruction of the ballots creates a presumption that improprieties occurred in the election process. Defendants are clearly not entitled to qualified immunity in this matter. Further, as discussed above, Defendants' destruction of the ballots was a clear violation of federal statute: 52 U.S.C. § 20701 (2020). Government officials are not entitled to qualified immunity in cases involving First Amendment violations related to the right to political speech. *See*, *e.g.*, *Rodriguez v. City of Doral*, 2018 U.S. Dist. LEXIS 14645 (S.D. Fla. Jan. 30, 2018) (denying a defendant government official's motion for summary judgment based on qualified immunity from a First Amendment claim).

Likewise, Defendants' intentional destruction of ballots – depriving Canova of the ability to inspect and ascertain the validity of the ballots and proper counting thereof – constituted an "intentional" action that "erode[d] the democratic process," thus depriving Canova of his Fourteenth Amendment rights. *See Hendon*, 710 F.2d 177, 182 (4th Cir. 1983) ("Whether the irregularity amounts to a constitutional claim depends on its severity, whether it was intentional or

more of a negligent failure to carry out properly the state election procedures, and whether it erodes the democratic process.").

Defendants appear to be arguing that destruction of election records to avoid public scrutiny is a discretionary function of their governmental roles. This would set a dangerous precedent, especially in light of the increasing threat of election interference. Defendants cite to unrelated case law concerning destruction of video and audio recordings as support for their argument that they are entitled to qualified immunity in this matter. Defendants attempt to reduce the destruction of the ballots in this matter to a violation of Canova's rights "under Florida's public records law," attempting to minimize the far-reaching implications of allowing government officials to destroy elections materials to avoid public scrutiny of those materials.

## D. Canova's Complaint should not be dismissed with prejudice.

Even if this Court finds any of Defendants' arguments compelling, dismissal with prejudice is improper. Canova is entitled to an opportunity to amend his Complaint in the instance that it is dismissed.

"Ordinarily . . . a plaintiff whose original complaint has been dismissed under Rule 12(b)(6) should be given at least one opportunity to try to amend her complaint before the entire action is dismissed." *Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519 (7th Cir. 2015). The Eleventh Circuit has likewise held that "a party must be given at least one opportunity to amend before the district court dismisses the complaint." *Henderson v. JP Morgan Chase Bank, N.A.*, 436 Fed. Appx. 935, 938 (11th Cir. 2011) (citing *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1012 (11th Cir. 2005)).

Defendants provide no support for their argument that the Complaint should be dismissed with prejudice. Thus, even if this Court finds any of Defendants' arguments persuasive, Canova should be allowed an opportunity to amend the Complaint.

## CONCLUSION

Canova's Complaint should not be dismissed. The Supervisor of Elections is a government official who may be sued. Canova's Complaint properly asserted claims for violations of his First and Fourteenth Amendment rights. There is a rebuttable presumption that elections irregularities existed such that Canova's rights were further harmed, in light of Defendants' destruction of the ballots. Defendants are not entitled to qualified immunity, due to the aforementioned violations of Canova's constitutional rights. Even if any of Defendants' arguments are persuasive, Canova should be allowed to amend the Complaint.

WHEREFORE, Plaintiff, TIM CANOVA, respectfully requests that this Honorable Court enter an order denying Defendants' Motion to Dismiss Plaintiff's Complaint, along with any other such relief as this Court deems just and proper.

## CERTIFICATE OF SERVICE

I hereby certify that on November 10, 2020, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system. I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to the following non-CM/ECF participants: Brenda C. Snipes at 2726 N.W. 36th Terrace, Lauderdale Lakes, FL 33311-1826, Dozel Spencer at 5300 NW 74th Terrace, Lauderhill, FL 33319, and Broward Supervisor of Elections at 115 S. Andrews Ave., Room 102, Fort Lauderdale, FL 33301.

DUTTON LAW GROUP, P.A.
P. O. Box 260697
Tampa, Florida  33685-0697
Designated Email Service addresses:
service.CSD@duttonlawgroup.com

service.AAS@duttonlawgroup.com
Phone: (813) 247-2222

/s/ Christopher S. Dutton

_____
CHRISTOPHER S. DUTTON, ESQUIRE
Florida Bar No: 115714
ANDREW STEADMAN, ESQUIRE
# 36553        Florida Bar No. 119402